[Civ. No. 39305. Second Dist., Div. Five. Mar. 21, 1973.]

SECURITY NATIONAL INSURANCE COMPANY,
Plaintiff and Respondent, v.
NORMAN W. HAND et al., Defendants and Appellants.

## Counsel

Linder, Schurmer, Drane & Bullis and Walter H. Drane for Defendants and Appellants.

Hagenbaugh & Murphy, Van A. Hagenbaugh and William D. Stewart for Plaintiff and Respondent.

## Opinion

**KAUS, P. J.**—Defendants ("claimants") appeal from a declaratory judgment to the effect that they recover nothing under the uninsured motorist coverage of plaintiffs' policy although claimants' uncompensated damages caused by an uninsured motor vehicle exceed the amount of such coverage.

### The Problem in Schematic Outline

Motorist H is involved in a three-car collision. His damages are in excess of $30,000 and are caused by the concurrent negligence of the other two drivers, X and M. There is no rational way to apportion the damages between X and M. X and his car are uninsured. M has liability insurance with a $15,000 per person limit. H's own policy includes the customary uninsured motorist coverage ("UMC") with a similar limit of $15,000. With his insurer's consent H collects $15,000 from M's insurer, which leaves him at least $15,000 short of being made whole. Is H's own insurer nevertheless discharged from any obligation under the UMC?

The trial court answered this question in the affirmative. We must disagree.

### The Actual Facts

The manner in which the parties had to proceed to submit the issue squarely to the court reveals possible practical shortcomings in the provisions of section 11580.2 of the Insurance Code, the statute which provides for semi-compulsory UMC.[1] The action is one for declaratory relief,

---

[1]The accident which is the wellspring of this litigation happened on February 16, 1969, before the amendment to section 11580.2 which became effective later that year. (Stats. 1969, ch. 1353, p. 2731, § 4.) That amendment's insertion of a new subdivision (e) required a relettering of all following subdivisions. Thus the present subdivision (g), relating to subrogation—the part of section 11580.2 with which we are principally concerned—was subdivision (f) at the time of the accident. Since neither the 1969 amendment nor any later one affects the legal issues involved in

filed by Security National Insurance Company ("Security"), the insurer of defendant Norman W. Hand. On the day of the accident Mr. Hand and his wife Margaret were struck by one Maae who was drunk. Maae was insured by Mercury Casualty Company ("Mercury"). His policy had the statutory minimum limits of $15,000 per injury and $30,000 per accident. (Veh. Code, § 16059.) Maae had been caused to collide with the Hand vehicle by X, a hit-and-run driver and, therefore, an uninsured motorist under the statute. (Ins. Code, § 11580.2, subd. (b).) Mr. Hand received personal injuries, his wife was killed. The defendants to Security's present action for declaratory relief are Hand and the other heirs of Margaret. ("Claimants.")

Mercury and claimants agree, at least for present purposes, that Hand's damages for his own personal injuries exceed $30,000 and that a fair evaluation of claimants' wrongful death claim is also in excess of $30,000.

Claimants filed an action against Maae. Mercury offered to pay its policy limit of $30,000 to claimants. At this point certain provisions of section 11580.2 posed a dilemma for both sides to this litigation: claimants, who contended that even after accepting the $30,000 from Mercury they would still be entitled to collect a like amount from Security under the UMC, were afraid of losing their rights if they settled with Mercury without Security's consent. (Ins. Code, § 11580.2, subd. (c) (3).) Security, on the other hand, while willing to give such consent, was afraid that it might thereby be deemed to waive its right of subrogation which only applies "to the extent that payment was made." (Ins. Code, § 11580.2, subd. (g).) Since Security's entire argument to the effect that it owes claimants nothing was—and is—based on the proposition that if it pays its own $30,000 limits to claimants, it could get the money right back from Mercury as claimants' statutory subrogee, it was vital to its position that its status as such should be preserved.

The parties, therefore, very sensibly entered into a contract under which Security consented to claimants' accepting $30,000 from Mercury. In consideration for this consent it was agreed that in the present action for declaratory relief the court "shall consider the matter as though Security had paid uninsured motorist benefits of [$15,000] on the wrongful death case of Mrs. Hand . . . and [$15,000][2] on the bodily injury case of

---

this case, we shall refer to section 11580.2 as it was structured after the 1969 amendment: more precisely, it is understood that subdivision (g) relating to subrogation actually was subdivision (f) at the time of the accident.

[2]Actually the bracketed figures of $15,000 are only $14,500, Security having paid $500 on account of Mr. Hand's medical expenses and $500 on account of Mrs. Hand's funeral expenses. These amounts were at the time legitimately deductible

Mr. Hand . . . and that the $30,000 will be paid by Mercury to [claimants] ($15,000 on the bodily injury case and $15,000 on the wrongful death case) after the final decision in the declaratory relief action. . . ."[3]

As noted at the outset, the trial court reached the conclusion that the payment by Mercury in effect discharged Security from all further obligations. This result was reached with great reluctance under the supposed compulsion of subdivision (g) of section 11580.2 which reads as follows: "(g) The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made. Such action may be brought within three years from the date that payment was made hereunder."

The court's reasoning was simply that Security's right to subrogation "against any person" included the right to be subrogated to claimants' rights against Maae and his insurer Mercury. (*Mills* v. *Farmers Ins. Exchange,* 231 Cal.App.2d 124 [41 Cal.Rptr. 650].) Thus if Security had paid its limits of $30,000 to claimants, it would have been subrogated to their claim against Maae and could have collected and pocketed Mercury's limits of $30,000. The net effect of all this would be that Security is out nothing, while claimants collect $30,000. The agreement between the parties merely avoided this circuity.

## DISCUSSION

■ We cannot agree that any such inequitable result was visualized by the Legislature. The coverage demanded by section 11580.2, subdivision (a) is one which insured "the insured . . . for all sums . . . which he . . . shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle." It is agreed between the parties that claimants' total damages against Maae and X exceed $60,000. Thus even after Mercury's payment of $30,000, claimants are still entitled to recover at least another $30,000 from X. ■ Under applicable principles of tort law the fact that Mercury's insured was also responsible for the full $60,000, in no way alters the fact that claimants are, as of this time, uncompensated to the extent of at least

from Security's total limits. (Ins. Code, § 11580.2, subd. (h) (2).) We believe that it will simplify the legal issues before us, if we ignore these deductions.

[3]At the time of trial, Mercury had already paid its $30,000 limit and the parties had agreed that this was accepted without prejudice to anybody's rights.

$30,000 "for bodily injury [and] wrongful death from the . . . operator of an uninsured motor vehicle." Thirty thousand dollars of that shortage is precisely what the statute and Security's policy as issued obligates it to pay. Elementary principles tell us that if there is any legitimate way to avoid holding that the Legislature took away in subdivision (g) what it granted in subdivision (a), we must do so.[4] Unless, by language that is "conspicuous, plain and clear" the subrogation provisions of subdivision (g) nullify the insuring provisions of the statute and the policy, the subdivision simply cannot have the effect contended for by Security. (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]; *Oil Base, Inc.* v. *Continental Cas. Co.,* 271 Cal.App.2d 379, 388-389 [76 Cal. Rptr. 594]. See also *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].)

The issue which divides the parties can be posed in terms of the purpose of section 11580.2: was it intended that if the motorist who has paid his premium for UMC and whose damages are far in excess of the minimum statutory and policy limits for that coverage has been partly made whole by a concurrent tortfeasor, the UMC never comes into play? Or, was it the intent of the Legislature that to the extent that the injured motorist who has purchased UMC cannot be made whole because of the financial irresponsibility of some of those who caused his loss, the UMC should fill the gap to the extent of its monetary limits?[5] The language of subdivision (g) throws little light on the answer to this question.[6] Obviously it was not

---

[4]Security's policy anticipates a favorable resolution of the legal issue which we are now deciding and provides that the amount payable under it may be reduced by "all sums paid by or on behalf of the owner or operator of the uninsured automobile *and any other person or organization jointly or severally liable together with such owner or operator . . .*" It cannot be seriously contended—nor is it—that this clause is valid if section 11580.2 does not permit Security to credit itself with the Mercury coverage. (*Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275].)

[5]The argument before us is sometimes posed as involving the question of who is entitled to the "windfall" of one of the two concurrent tortfeasors being insured up to a certain amount. It seems barbarous to speak of a windfall, as long as we have an injured party whose legitimate claim for damages is still at least 50 percent unsatisfied. The basic assumption of the law of torts is that defendants will compensate plaintiffs for the damages that they cause. There is no such thing as a windfall until that assumption has proved justified in fact.

[6]The only case which has ever interpreted subdivision (g) is *Mills* v. *Farmers Ins. Exchange,* 231 Cal.App.2d 124 [41 Cal.Rptr. 650]. At the time of the accident involved in *Mills* the subdivision read as it does now, except that it provided for subrogation to the insured's rights against "the person" causing injury. In 1961 "the person" became "any person," the present language. *Mills* held that the 1961 amendment did not change the meaning of the subdivision and that "the person" had meant "any person" all along. This decision was made in the context of an action for declaratory and injunctive relief by Mills, an insured motorist, against the victim's

drafted with our problem in mind. Thus where it speaks of an "insurer paying a claim under an uninsured motorist endorsement or coverage" it does not necessarily—"conspicuously, plainly or clearly," if you will—refer to a situation where payment of the claim makes the insured only half-whole. Where the subdivision speaks of a right to subrogation "to the extent that payment was made," it does not necessarily say that this right of subrogation takes precedence over the insured's unsatisfied claim for damages, concurrently asserted against the same source. It seems obvious that if the Legislature had intended that the problem presented by this case should be solved as Security claims it must be, it could, should and would have done so with clarity. The authorities teem with recognition of the remedial purpose of section 11580.2 and the compelled liberal construction of the statute for the purpose of carrying out its objective "of providing compensation for those injured through no fault of their own." (*Katz* v. *American Motorist Ins. Co.,* 244 Cal.App.2d 886, 890-891 [53 Cal.Rptr. 669]; see also authorities gathered in *Valdez* v. *Federal Mut. Ins. Co.,* 272 Cal.App.2d 223, 226-227 [77 Cal.Rptr. 411].) We have found no authority which would justify us in holding that the Legislature intended that subdivision (g) be construed to thwart that purpose.

To support the proposition that the UMC insurer is entitled to subrogation against the tortfeasor before its insured is made whole, Security refers us to the cases which dealt with the "under-insured motorist" situation: *Taylor* v. *Preferred Risk Mut. Ins. Co.,* 225 Cal.App.2d 80 [37 Cal.Rptr. 63], *Calhoun* v. *State Farm Mutual Auto. Ins. Co.,* 254 Cal.App.2d 407 [62 Cal.Rptr. 177] and *Kirkley* v. *State Farm Mut. Ins. Co.,* 17 Cal.App.3d 1078 [95 Cal.Rptr. 427].

The problem posed by these cases is this: the UMC insured has an accident with a motorist who has liability insurance with limits below those required by section 11580.2. The question then becomes whether the UMC comes into play at all. While section 11580.2 defines an uninsured motor vehicle as one with respect to which "there is no bodily injury

---

UMC insurer. In that action Mills tried to establish that the statute permitted subrogation only against the uninsured motorist—one Jones— and not against him. He lost. In the present context this means that Maae or Mercury would lose if they tried to establish that Security is not subrogated to claimants' rights against Mercury's $30,000 limits. That, however, is not the issue in this case. No one contends that Security cannot be subrogated to claimants' rights against Mercury. Thus if X could be located, sued, recovered against and found to be financially responsible, Security having paid its limits of $30,000, would undoubtedly be subrogated to claimants' rights against Mercury. Nothing in *Mills* even touches on our problem: does subdivision (g) permit Security to shoulder claimants aside and grab Mercury's $30,000 before claimants are made whole?

liability insurance . . . applicable . . . ," the limited amount of insurance which is applicable is less than that prescribed by section 11580.2, subdivision (a). In *Taylor* the court found subdvisions (a) and (b) to be "in obvious conflict." It held that it could not have been the intent of the Legislature that the UMC remain inviolate if the other motorist "carried insurance of $1,000, $500, or even $1.00," rather than the statutory limits which then were $10,000/$20,000. Having in mind "the declared legislative and judicial policy of this state . . . to give monetary protection to those who . . . suffer injury through negligent use of the highways by others," the court held that the UMC applied. Then, apparently in response to an argument that this interpretation of 11580.2 would provide the insured with more coverage than the section contemplated, the court said: "No 'double coverage' problem is involved, since the act . . . gives defendant subrogation rights against the [underinsured motorist], and thus affords it recourse to such coverage as he has." (*Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d at p. 83.) It should be noted that in *Taylor* it had not been established that the insured suffered damages in excess of the $10,000 limit.

*Calhoun* v. *State Farm Mutual Auto. Ins. Co., supra,* did not even mention the question of subrogation. *Kirkley* v. *State Farm Mut. Ins. Co., supra,* on the other hand does talk about subrogation at some length. Again it was not established that the insured suffered damages in excess of the new minimum of $15,000. The court, however, assumes that he will prove damages in at least that amount and then goes on to say that the insurer will be subrogated to the coverage on the underinsured motor vehicle.[7]

Neither *Taylor* nor *Kirkley* is persuasive with respect to our problem. First of all it must be recognized that to the extent that either case indicates that the UMC carrier has priority to the coverage on the underinsured vehicle, it is dictum. All the same, even if the two dicta are the law—and we need not dispute their authority as such—the *Taylor-Kirkley* situation

---

[7]". . . The statutory scheme contemplates that once the uninsured motorist coverage comes into play, the injured insured has resort to the full coverage for which he has paid. To the extent of any payment made by it under the uninsured motorist coverage, the carrier is subrogated to the injured insured's rights against the uninsured or underinsured motorist and is thus afforded recourse to such coverage as he has. (Ins. Code, § 11580.2; see *Taylor* v. *Preferred Risk Mut. Ins. Co., supra,* 225 Cal.App.2d 80.) The diffculty, if any, comes from classifying Kranick as 'uninsured' within the meaning of Insurance Code section 11580.2. That classification, however, is concededly compelled by the *Taylor* and *Calhoun* cases decided in 1964 and 1967, respectively. [Fn. omitted.] The Legislature not having amended section 11580.2 to countermand the *Taylor* and *Calhoun* decisions, it must be presumed that those decisions are in accord with the legislative intent." (*Kirkley* v. *State Farm Mut. Ins. Co., supra,* 17 Cal.App.3d at p. 1082.)

is quite different from ours. The *Taylor* result—followed in *Kirkley*—is on its face a compromise between conflicting statutory provisions. The court was faced with a situation in which the insurer could quite plausibly argue that $10,000 of UMC was wiped out by minimal coverage on the tortfeasor's car—"1,000, $500, or even $1.00." It solved the problem in solomonic fashion[8] by enforcing the UMC, but assigning to the insurer the benefit of the tortfeasor's coverage by way of subrogation. Thus, in the extreme case visualized by the *Taylor* court, the UMC insurer had to pay $10,000 to its insured to be entitled to the right of subrogation with respect to the one dollar of coverage available to the tortfeasor.

Finally, with all respect, the *Taylor* dictum does not really justify the *Kirkley* dictum. The former was a response to an argument that the UMC insured was not entitled to "double coverage," that is to say $15,000 in money for $10,000 worth of damages. In such a case by permitting the UMC insurer to reach the coverage of the underinsured motorist by way of subrogation, the law reaches the only fair result: $10,000 of coverage for $10,000 of damages. When, however, the damages exceed the limit of the UMC, as the *Kirkley* court assumed, no double coverage problem results if the money furnished by the insurer of the underinsured motorist is first devoted to making the UMC insured whole.

In any event, it certainly does not follow that the equitable reconciliation of conflicting provisions in section 11580.2 achieved by the *Taylor* and *Kirkley* dicta, demands an inequitable result in our, drastically different situation. The effect of *Taylor* and *Kirkley* is merely that the insured does not receive more than his own UMC calls for when he is injured by an underinsured motor vehicle. The fact that in such a situation the insurer is given a limited priority to the amount of underinsurance, cannot be escalated into a general principle to the effect that he is first in line when one of the tortfeasors has no insurance at all. ■ In our case claimants were damaged by two tortfeasors, one insured, the other not. In law the uninsured driver is fully liable for all of claimants' damages, as if the insured driver were not even in the picture.[9] ■ This is precisely the

---

[8]Luckily money is more easily divisible than babies. It is, perhaps of interest that in *White* v. *Nationwide Mutual Insurance Company*, 361 F.2d 785, the court interpreted Virginia law as not permitting subrogation to the UMC carrier. The damages were $22,000. The insurer for the underinsured motorist paid $10,000. The UMC insurer unsuccessfully urged that its exposure was reduced from $12,000 to $5,000 because it was subrogated to the $10,000 already paid.

[9]The result we reach depends in no way on the intricacies of the law of damages relating to joint or concurrent tortfeasors. (See generally Prosser on Torts (4th ed. 1971) p. 319.) We do, however point out, that it is easily conceivable that the mechanics of an automobile accident on account of which two drivers are liable to

kind of liability which UMC is all about. As we said before, nothing short of a provision which conspicuously, plainly and clearly tells the UMC insured that he is not getting the kind of protection which the UMC reasonably leads him to believe he has will do to take it away from him. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 273.) Subdivision (g) does not meet these criteria.

At least two cases from sister states appear to have reached the same result which, we believe, established principles of California law compel here. They are *Motorists Mutual Ins. Co.* v. *Tomanski,* 27 Ohio St.2d 222 [56 Ohio Ops.2d 123, 271 N.E.2d 924], and *United Services Automobile Association* v. *Cotter* (Fla.App.) 241 So.2d 733.[10]

This opinion would be unnecessarily lengthened if we analyzed each case in detail.[11] In each the applicable statute provided for subrogation in language similar to subdivision (g) of section 11580.2.[12]

Security attempts to distinguish *Tomanski* and *United Services* on grounds which are not too persuasive and which need not detain us. The

---

an injured plaintiff are such that while the injured plaintiff's damages cannot logically be apportioned among the two defendants, neither defendant, acting alone, would have caused damages of the severity which actually resulted. (See, e.g., *Finnegan* v. *Royal Realty Co.,* 35 Cal.2d 409, 433-434 [218 P.2d 17]; *DeCorsey* v. *Purex Corporation,* 92 Cal.App.2d 669, 676 [207 P.2d 616].)

[10] A more recent Florida case involving subrogation under an uninsured motorist coverage statute appears to be in conflict with our view, but actually is not. In *International Sales-Rentals Leasing Co.* v. *Nearhoof* (Fla.) 263 So.2d 569, the Florida Supreme Court, reversing the District Court of Appeal (*Nearhoof* v. *International Sales-Rentals Leasing Co.* (Fla.App.) 251 So.2d 717) held that a carrier's subrogation rights, as provided by the Florida statute then in effect (see *infra,* fn. 12), extended to a recovery obtained by the insured from a joint tortfeasor. (263 So.2d at p. 570.) However, it is clear that the court is thinking about a joint tortfeasor who is either solvent or fully insured. Thus all that the decision stands for is that the insured cannot recover more than 100 percent of his loss.

[11] In *Tomanski* the Supreme Court of Ohio states the question it decides as follows: "The sole question presented is whether the Tomanski claim under the uninsured motorist contract is enforceable; or, stated another way, whether the concurrent negligence of the operator of an insured third vehicle postpones, reduces, or eliminates the contractual rights which would otherwise exist. We hold that the presence of the third vehicle does not alter the contractual obligation under the uninsured motorist provision of the policy of the insurer. . . ." (*Motorists Mutual Ins. Co.* v. *Tomanski,* 271 N.E.2d at p. 925.)

[12] The Ohio statute, Revised Code section 3937.18 (C) reads as follows: "In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payments to the extent thereof is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made. . . ."

The Florida statute, section 627.0851 (4), in force at that time provided: "In the event of payment to any person under the coverage required by this section and

real distinction seems to be that the Ohio and Florida counterparts of Security's counsel in this case, did not muster the brilliance of advocacy which, in the case at bar, persuaded a reluctant trial court that the UMC insurer's subrogation rights took precedence over its own insured's uncompensated loss.[13]

The judgment is reversed.

Stephens, J., and Ashby, J., concurred.

On April 18, 1973, the opinion was modified to read as printed above.

---

·subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, . . ." This section was substantially amended and renumbered section 627.727 of the Florida Statutes. (Fla. Laws, 1970, ch. 70-20, § 19.)

[13]Claimants also refer us to a decision of the Nebraska Supreme Court, *Stephens* v. *Allied Mutual Insurance Company*, 182 Neb. 562 [156 N.W.2d 133, 26 A.L.R.3d 873]. The case involves a different problem relating to UMC and is simply not in point. It does, however, contain much language which claimants understandably do not wish us to overlook. Thus the court says that the purpose of UMC "is to give the same protection to the person injured by an uninsured motorist as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability policy. Such provisions are to be liberally construed to accomplish such purpose. . . ." Further: "The proper construction of this separately paid for insurance coverage clause should not be an exercise in the blind semantics of literal language construction . . . ." While such passages do establish the atmosphere in which cases such as the one at bar should be decided, they are not too useful in assessing the specific effect of a specific aspect of UMC in a specific factual setting.