68 Cal.App.3d 1061 (1977)
137 Cal. Rptr. 690
CALIFORNIA STATE AUTOMOBILE ASSOCIATION INTER-INSURANCE BUREAU, Plaintiff and Respondent,
v.
ALFRED HUDDLESTON et al., Defendants and Appellants.
Docket No. 16227.
Court of Appeals of California, Third District.
March 30, 1977.
*1062 COUNSEL
Leverenz & Ward and Carl B. Leverenz for Defendants and Appellants.
Roberts & Perdue, Norman R. Roberts and Healy & McCray for Plaintiff and Respondent.
OPINION
REGAN, J.
In this action for declaratory relief seeking a determination of the rights and duties of the parties under an insurance policy which *1063 provided for uninsured motorist protection, the trial court ruled the policy issued by plaintiff did not afford coverage to the defendants. They appeal.
On October 27, 1974, Laura Huddleston was a passenger in an automobile driven by Kenneth Krueger. On that date the Krueger vehicle was involved in an intersection accident in the City of Eureka with a car driven by James Hay. Laura, the daughter of the Huddlestons, was killed in the collision. Krueger and Hay were concurrently negligent.
Krueger was insured by defendant Insurance Company of North America (INA).[1] The coverage included third party liability protection and uninsured motorist protection. Neither Hay, the driver of the second vehicle, nor Clark, the owner of that vehicle, carried third party liability insurance.
Defendants Alfred and Martha Huddleston, the parents of Laura, were insured by plaintiff California State Automobile Association Inter-Insurance Bureau (CSAA). Laura was eligible for coverage under the uninsured motorist provisions of this policy.
The defendants made claim for the wrongful death of their daughter against Krueger and INA paid on behalf of Krueger its policy limits of $15,000 under the third party liability portion of the policy.
A claim was made by defendants against plaintiff insurer (CSAA) for coverage under the aforementioned uninsured motorist clause. Plaintiff contended that its policy was not applicable to the accident in question. At the time of the trial such claim was the subject of a stayed arbitration action. It was agreed that the damage suffered by the Huddlestons was in excess of $30,000.
The issue on appeal is whether after payment by INA (the carrier for the insured, concurrently negligent driver, Krueger), under the third party liability portion of its policy the CSAA policy of insurance became liable to make defendants whole under its uninsured motorist provisions for the negligent conduct of the uninsured driver, Hay.
Defendants rely exclusively on Security Nat. Ins. Co. v. Hand (1973) 31 Cal. App.3d 227 [107 Cal. Rptr. 439], and Travelers Ins. Co. v. Bouzer (1974) 39 Cal. App.3d 992 [114 Cal. Rptr. 651]. They assert these two cases *1064 clearly establish the right of an injured victim to look to his own uninsured motorist coverage where the third party liability policy limits of the insured tortfeasor will not make his victim whole.[2]
Plaintiff maintains its policy of insurance does not extend coverage to the Huddlestons under the uninsured motorist provisions in that their daughter was occupying a nonowned automobile which had similar uninsured motorist coverage. Plaintiff argues thus the issue is which uninsured motorist coverage is applicable, citing Insurance Code section 11580.2, subdivision (c)(2), and terms of its own policy. It further contends under subdivision (d) of section 11580.2, and other insurance provisions of the policy, that its policy is not applicable since INA provided $15,000 of uninsured motorist coverage.[3]
The Huddlestons also submit that defendant INA, representing its insured, Krueger, did not have uninsured motorist coverage which would bring into effect Insurance Code section 11580.2, subdivision (c)(2), because, as a joint tortfeasor, Krueger's third party liability policy was responsible for defendants' loss up to the limits of its policy.[4] INA had honored its obligations, and thus the uninsured motorist provisions of its policy afforded no coverage to the Huddlestons. Since Krueger had no insurance similar to that provided in section 11580.2 of the Insurance Code which would apply to the Huddlestons, they were left to look to their own policy. The Huddlestons liken their situation to those cases where an insured may have had uninsured motorist coverage but, through insolvency of the company, the victim is allowed to seek redress for the conduct of the tortfeasor through his own uninsured motorist *1065 coverage. (See Firemen's Ins. Co. v. Diskin (1967) 255 Cal. App.2d 502, 504 [63 Cal. Rptr. 177]; Katz v. American Motorist Ins. Co. (1966) 244 Cal. App.2d 886, 891 [53 Cal. Rptr. 669].)
Plaintiff dismisses Hand and Bouzer as being entirely distinguishable. It submits that those cases involved the interpretation of subdivision (g) of section 11580.2 of the Insurance Code (so-called subrogation clause) and thus have no application here.
Plaintiff argues that the concurrent negligence of INA's insured does not change the uninsured motorist coverage. That insurer's uninsured motorist coverage is still primary. Plaintiff maintains the fact that INA is entitled to an "offset" for payments made under the liability portion of its policy is one of the fundamental policies of Insurance Code section 11580.2.[5]
Plaintiff goes even further. It points out that section 11580.2 makes provision for other offsets. (See subds. (e) [medical payments] and (h)(1) [workers' compensation payments].) (1) (See fn. 6.) Plaintiff submits that these offsets clearly show the intent of the Legislature to abrogate the collateral source rule,[6] allowing the victims to recover up to the limits of the financial responsibility laws. It then makes the following statement: "Plaintiff submits the Legislature never intended to make all victims whole in any and all cases." (Cf. Travelers Ins. Co. v. Bouzer, supra, 39 Cal. App.3d at p. 995 [uninsured motorist coverage not excess accident insurance].)
On appeal, plaintiff attempts to formulate a new argument. In essence, plaintiff asserts that defendants should have gone against INA on both accounts and in a particular order. (See Cal. Uninsured Motorist Practice (Cont.Ed.Bar 1973) § 1.68, pp. 50-51; see also § 6.8, p. 191 [as matter of *1066 strategy, text suggests injured claimant should pursue uninsured motorist claim before suing host driver in tort to avoid offset provisions].)[7]
Defendants, according to this theory, used the wrong strategy and made a wrong election in pursuit of their remedy. Plaintiff concludes this is not grounds to change the substantive law of the uninsured motorist statute.[8]
We are here confronted with a situation where the person suffering the damage has not been made whole. This is not, of itself, a novel situation where serious vehicular accidents are involved. On the surface, however, it would appear that additional coverage was available through the insured's own policy since Hays, a concurrent tortfeasor, was an uninsured driver. The plaintiff, defendants' insurer, denies coverage based upon certain language contained in the statute. (See Ins. Code, § 11580.2, subd. (c)(2).) Defendants rely heavily on the "very broad language in support of a liberal application of the uninsured motorist statute" used by the court in Hand.[9]
*1067 The facts in Hand are quite similar to those in our case. There, the defendants were also involved in a three-car collision caused by the negligence of the other two drivers. There, as here, one of the negligent drivers was insured and one was not. Again, the defendants' damages exceeded the amount paid by the insured driver's carrier. Their own policy included the customary uninsured motorist coverage. On the basis of these facts it was held that the uninsured motorist coverage (under defendants' own policy) was applicable to defendants.
The Hand court appeared to base its decision on broad philosophical grounds, stating: "The authorities teem with recognition of the remedial purpose of section 11580.2 and the compelled liberal construction of the statute for the purpose of carrying out its objective `of providing compensation for those injured through no fault of their own.'" (31 Cal. App.3d at p. 233.) In summing up, the court makes the following comments (at pp. 235-236): "In our case claimants were damaged by two tortfeasors, one insured, the other not. In law the uninsured driver is fully liable for all of claimants' damages, as if the insured driver were not even in the picture. This is precisely the kind of liability which UMC is all about. As we said before, nothing short of a provision which conspicuously, plainly and clearly tells the UMC insured that he is not getting the kind of protection which the UMC reasonably leads him to believe he has will do to take it away from him."[10]
The plaintiff, however, relies on Insurance Code section 11580.2, subdivision (c)(2), to refute any notion of coverage. This subdivision reads: "(c) The insurance coverage provided for in this section does not apply:
".... .... .... .... ...
"(2) To bodily injury of the insured while in ... an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section."
*1068 (2) This provision is commonly known as the "excess insurance clause," and is partially designed to prevent double recovery in situations where more than one policy's uninsured motorist protection is involved. It also attempts to insure the carriers that no company will have to pay more than its fair share of the loss. (See Eisler, op. cit. supra, §§ 8.2 and 8.3, pp. 156-158.)
In our situation, however, there is no possibility of double recovery. The fact is that the insured in our case has not been fully indemnified for his damages even though there is uninsured motorist coverage available, although it may be termed "secondary." Moreover, it is quite possible that the uninsured motorist provisions of the INA policy do not even afford coverage to defendants since the insurer paid its policy limits under the liability portion of the policy and thus may be allowed an appropriate reduction in the amount payable under its uninsured motorist portion of the policy. In that event there is no excess insurance and section 11580.2, subdivision (c)(2), is not applicable.
In view of the foregoing, we are convinced that the guiding principles set forth in Hand should control here.[11] Under our facts, to absolve or discharge plaintiff, defendants' insurer, from any obligation under the uninsured motorist coverage would be inequitable. This is precisely what the statute, and the policy issued under it, are for. (Security Nat. Ins. Co. v. Hand, supra, 31 Cal. App.3d at pp. 231-232, 235-236.) The purpose to be served by Insurance Code section 11580.2, subdivision (c)(2), is simply not present here.[12] Hence, that clause is not applicable. Moreover, we do not think our conclusion is fundamentally unfair to plaintiff. It is merely providing the coverage to defendants which they had a right to expect. (See Herzog v. National American Ins. Co. (1970) 2 Cal.3d 192, 197 [84 Cal. Rptr. 705, 465 P.2d 841]; cf. State Farm Mut. Auto. Ins. Co. v. Partridge (1973) 10 Cal.3d 94, 101-102 [109 Cal. Rptr. 811, 514 P.2d 123].) Under the circumstances, we are of the opinion that the defendants are entitled to avail themselves of their own uninsured motorist insurance *1069 coverage to compensate them for the negligent acts of an uninsured motorist.
The judgment is reversed.
Friedman, Acting P.J., and Evans, J., concurred.
Respondent's petition for a hearing by the Supreme Court was denied June 23, 1977, Clark, J., and Richardson, J., were of the opinion that the petition should be granted.
NOTES
[1] Not appellants here.
[2] Defendants apparently rely on the following language in Hand: "In our case claimants were damaged by two tortfeasors, one insured, the other not. In law the uninsured driver is fully liable for all of claimants' damages, as if the insured driver were not even in the picture. This is precisely the kind of liability which [uninsured motorist coverage] is all about." (31 Cal. App.3d at pp. 235-236.) Defendants, however, make no attempt to analyze the two cases or explain precisely how the holdings support their cause.
[3] This subdivision states: "(d) Subject to paragraph (c)(2), the policy or endorsement may provide that if the insured has insurance available to him under more than one uninsured motorist coverage provision, any damages shall not be deemed to exceed the higher of the applicable limits of the respective coverages, and such damages shall be prorated between the applicable coverages as the limits of coverage bears to the total of such limits."
[4] These provisions state: "(c) The insurance coverage provided for in this section does not apply:

".... .... .... .... .... .
"(2) To bodily injury of the insured while in or upon or while entering into or alighting from an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section."
[5] Plaintiff cites subdivision (h) which provides, in pertinent part: "Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced:

".... .... .... .... .... .
"(2) By the amount the insured is entitled to recover from any other person insured under the underlying liability insurance policy of which the uninsured motorist endorsement or coverage is a part."
[6] Nevertheless, California remains a firm proponent of the "collateral source" rule. (Hrnjak v. Graymar, Inc. (1971) 4 Cal.3d 725, 729-730 [94 Cal. Rptr. 623, 484 P.2d 599, 47 A.L.R.3d 224].) "This doctrine provides that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." (Id., at p. 729.)
[7] Plaintiff states: "Appellants should have proceeded first against INA with their uninsured motorist claim. Insurance Code 11580.2(h) provides in part that payment to an insured under the Uninsured Motorist Act shall not be delayed or made contingent on decisions on liability or distribution of loss costs under other liability insurance on bond applicable to the accident. In the instant case, they should have first recovered the uninsured motorist limits of $15,000. There would have been no offset since they have not recovered any damages from the concurrent negligent host driver. After recovering their uninsured motorist claim, they should then have proceeded against the host driver. The host driver being jointly and severably liable for the death of appellants' daughter, appellants would have received a judgment against him in excess of $30,000. (Agreed Statement of Facts No. 8 C.T. 17.) This judgment would be reduced by $15,000 which the Huddlestons had collected under the uninsured motorist provision of the policy. (California Civil Procedure 877.) The Huddlestons then could collect the limits of $15,000 under the liability portion of INA without any offset."

Defendants state that the text cited by plaintiff takes the position that subdivision (h) of section 11580.2 probably precludes a double recovery from the driver's insurance company under identical circumstances. Thus, the suggested procedure is merely an attempt to avoid the consequences of subdivision (h). Hence, defendants maintain the authority relied on is irrelevant since they are attempting to recover from the uninsured motorist provision of their own insurance policy for the concurrent negligence of the uninsured driver.
[8] Plaintiff's main argument remains, however, that its policy of insurance does not extend coverage to defendants under the uninsured motorist provisions since defendants' daughter was occupying a nonowned automobile which had similar uninsured motorist coverage. (See Ins. Code, § 11580.2, subd. (c)(2).)
[9] In the trial court and in their opening brief the defendants also cite Travelers Ins. Co. v. Bouzer, supra, for support, but without explanation. In Bouzer this court refused to allow the insured to recover the balance of his claim exceeding the limits of the tortfeasor's insurer's coverage from his own insurer under his uninsured motorist coverage. (39 Cal. App.3d at pp. 995-998.) This case, if anything, appears to support the plaintiff's view. Bouzer has been criticized. (See Eisler, Cal. Uninsured Motorist Law Handbook (2d ed. 1976 supp.) § 5.2, pp. 39-40.)
[10] It is the view of one authority that the Hand case means "that in the event an injury occurs to an insured through the joint negligence of an insured and an uninsured tortfeasor and the damages suffered by the insured exceed the limits of the insured tortfeasor's policy, recourse can be had against the injured's uninsured motorist carrier, and the subrogation section [subd. (g)] is not applicable and the uninsured motorist carrier has no subrogation or set-off rights." (Eisler, op. cit. supra, § 10.3. p. 181: see also § 1.22, p. 27: § 9.2, p. 167.)
[11] In reaching this decision, we are well aware that Hand came to the court as a subrogation problem. (See 31 Cal. App.3d at pp. 229-231.) Nevertheless, the principles of law enunciated there apply equally in our situation. Nor are we impressed by plaintiff's argument that defendants pursued the wrong remedy and the wrong party. We know of no requirement that defendants must first have exhausted all possibilities (however remote) as against INA.
[12] As previously noted, there is no chance of double recovery here. A possible "windfall" argument was demolished by the court in Hand. (31 Cal. App.3d at p. 232, fn. 5.)