Maurine HUGHES, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.

No. 78–1626.

United States Court of Appeals, Eighth Circuit.

Submitted May 9, 1979.

Decided Aug. 17, 1979.

**574**

Douglas A. Christensen, Pearson & Christensen, Grand Forks, N. D., for appellant.

Mart R. Vogel and C. Nicholas Vogel, of Vogel, Brantner, Kelly Knutson, Weir & Bye, Fargo, N. D., for appellee.

Before LAY, STEPHENSON and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

Plaintiff Maurine Hughes brought this action against State Farm Mutual Automobile Insurance Company (State Farm) seeking a declaration of the rights and obligations of the parties under a recreational vehicle insurance policy issued to plaintiff by State Farm. Although the policy did not provide uninsured motorist coverage, plaintiff seeks a declaration that State Farm is required by the financial responsibility laws of North Dakota to provide uninsured motorist coverage of $20,000, the statutory minimum of $10,000 for each of two snowmobiles allegedly insured under the policy. The claim arises out of injuries sustained by plaintiff in a collision between a snowmobile driven by her husband, Donald T. Hughes, on which she was a passenger, and another snowmobile owned and operated by Vernon Sander. The Sander snowmobile was uninsured.

Initially plaintiff commenced an action in state court against her husband and Sander. While Sander answered, Hughes defaulted. State Farm refused to defend Hughes because of an household exclusion clause in the policy, and a judgment for $146,327.40 was entered against him. Following the decision in *Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975), in which the North Dakota Supreme Court ruled the family exclusion clause was void as violative of public policy and financial responsibility laws, State Farm paid its policy limits of $100,000 plus interest and costs.

Thereafter plaintiff notified State Farm of her intent to proceed against State Farm for uninsured motorist coverage for any judgment obtained against Sander and requested State Farm to enter settlement negotiations. State Farm notified plaintiff's counsel that it was "not interested in exploring settlement."

Plaintiff and Sander subsequently executed a Stipulation for Judgment and Compromise Agreement, by which Sander agreed to be indebted to plaintiff for $20,000 in exchange for full settlement of plaintiff's claim against him.[1] Pursuant to the stipulation a judgment for $20,000 with interest was entered.

Plaintiff then commenced the instant action seeking a declaration that State Farm was required by the financial responsibility laws of North Dakota to provide uninsured motorist coverage of $10,000, the statutory minimum, for each of the two snowmobiles

---

1. In relevant part the agreement reads:

These parties hereby stipulate and agree that in full settlement of plaintiff's claim against Vernon C. Sander, the defendant Vernon C. Sander shall personally and not through the North Dakota Unsatisfied Judgment Fund, be indebted to plaintiff Maurine Hughes for the sum of $20,000 in full and complete satisfaction of plaintiff's claim against Vernon C. Sander. It is expressly stipulated and recognized that parties are not considering the issue of contribution existing between Vernon C. Sander and Donald Hughes, the other defendant in said case, and that the sum of $20,000 is a full and complete settlement of an amount owed to plaintiff by Vernon C. Sander and in no way relates to any obligation to plaintiff or Vernon C. Sander by Donald Hughes.

covered by the policy. The district court, the Honorable Paul Benson, ruled in favor of State Farm. The court concluded that: plaintiff had failed to prove that she was legally entitled to recover from Sander, (2) that in any event plaintiff could not recover pursuant to N.D.Cent.Code Section 26–02–44 without having the judgment amount offset by the amount she received from State Farm in partial satisfaction of the judgment against her husband, and (3) that in the event plaintiff could recover, only $10,000 was available in uninsured motorist coverage. Plaintiff appealed from the judgment so entered.

The issues presented on appeal are: (1) whether the district court erred in concluding that plaintiff had not established, as required by N.D.Cent.Code Section 26–02–42, that she was legally entitled to recover damages from Sander; (2) whether the district court erred in concluding that N.D. Cent.Code Section 26–02–44 required any recovery provided by uninsured motorist coverage to be offset by the proceeds of the judgment obtained against her husband; and (3) assuming the court erred on issues one and two, whether it erred in concluding that the maximum amount of uninsured motorist coverage to which plaintiff would be entitled would be $10,000.

## I. *Proof of Obligation of Uninsured Motorist.*

■ North Dakota Cent. Code Section 26–02–42 reads:

> No motor vehicle liability policy of insurance against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto . . . for the protection of persons

insured thereunder who are *legally entitled to recover damages* from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom. (Emphasis added.)

The parties agree that the phrase, "legally entitled to recover damages," requires a showing of liability on the part of the uninsured motorist as a prerequisite to recovery. They disagree over the effect of plaintiff's judgment against Sander.

State Farm's position, which essentially was adopted by the district court, is that the stipulation of facts upon which the case was tried did not contain any statements establishing Sander's liability for plaintiff's injuries and the judgment against Sander does not cure that defect. The district court relied on *Midwest Mut. Ins. Co. v. Aetna Cas. & Sur. Co.,* 216 Va. 926, 223 S.E.2d 901 (1976). There both Midwest and Aetna provided uninsured motorist coverage for the same insured, who was injured in an accident with an uninsured motorist. Following the accident a dispute developed between Midwest and Aetna concerning the nature of the uninsured motorist coverage provided by their respective policies. After Midwest settled with the insured, it sued Aetna for contribution. At the time of settlement no action had been commenced against the uninsured motorist. The court held that without notice to the insurer and without entry of a judgment there existed no proof of the insurer's obligation unless the plaintiff assumed the burden of showing negligence on the part of the uninsured motorist. The case is clearly distinguishable. Here a valid judgment was entered against Sander. In addition State Farm was given notice of the pending suit before the judgment was entered. It is clear that under North Dakota law the insurer could have intervened in the action.[2]

---

**2.** The North Dakota intervention rule, N.D.R. Civ.P. 24(a)(2), is patterned after Fed.R.Civ.P. 24(a)(2). Both rules are worded to allow intervention of right if the party claims an interest relating to the property or transaction which is

the subject matter of the action and the party is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest. *See generally* annot., 95 A.L.R.2d 1330 (1964).

Plaintiff's position is that her judgment conclusively establishes Sander's liability and is not subject to collateral attack. We agree. A number of courts have held that judgments against uninsured motorists as to liability and damages are enforceable against the insurance company. *See Christiansen v. Farmers Ins. Exch.,* 540 F.2d 472 (10th Cir. 1976); *MFA Mut. Ins. Co. v. Lovins,* 248 F.Supp. 108 (E.D.Ark.1965); *Andeen v. County Mut. Ins. Co.,* 70 Ill. App.2d 357, 217 N.E.2d 814 (1966); *Wells v. Hartford Accident & Indem. Co.,* 459 S.W.2d 253 (Mo.1970); *Boughton v. Farmers Ins. Exch.,* 354 P.2d 1085 (Okl.1960); *State Farm Mut. Auto. Ins. Co. v. Christensen,* 88 Nev. 160, 494 P.2d 552 (1972); 19 G. Couch, Cyclopedia of Insurance Law § 82.-1:4 (2d ed. 1968). A common thread in each of those decisions is the rationale that, once the insurer is given timely notice of the insured's suit and the opportunity to intervene and defend, the judgment obtained is a final determination of the issues it covers, notwithstanding the fact that the insurer was not a party to the suit by the insured against the uninsured motorist. *See* A. Widiss, A Guide to Uninsured Motorist Coverage § 7.14 (1968 & Supp. 1978).[3]

In the absence of any controlling North Dakota law to the contrary, we find the overwhelming weight of authority would recognize the judgment entered against Sander as sufficient to establish his obligation under the statute.

II. *Recoupment.*

■ North Dakota Cent. Code Section 26–02–44 reads:

In the event of payment by an insurer to any person under the uninsured motorist coverage, the insurer making such payments shall, to the extent thereof, be entitled to the proceeds of any settlement of judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the damage for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer provided, however, this section shall not allow any insurer a cause of action against or recovery from the North Dakota state unsatisfied judgment fund.

Working from the premise that plaintiff's judgment against Donald Hughes established not only Hughes' liability but also the full extent of plaintiff's damages, the district court reasoned that Hughes was necessarily responsible for the damage for which any payment pursuant to Section 26–02–44 would be made.[4] Therefore, the district court reasoned under the statute that State Farm was entitled, to the extent of its payment, to the proceeds of any recovery by plaintiff from "*any* person or organization legally responsible for the damage for which such payment is made . . . ." The court then concluded that State Farm would be entitled to recover the amount of any payment pursuant to Section 26–02–44 from the proceeds of plaintiff's judgment against Hughes. The district court reasoned that compulsory uninsured motorist coverage was not intended to provide an additional source of recovery, but rather to provide the only source of recovery where no other source exists. On appeal plaintiff challenges the district court's interpretation, contending that the proceeds referred to in the statute are those recovered by an insured from the owner or operator of an uninsured motor vehicle or from other persons or organizations who might be legally responsible for such owner or operator, not

---

3. The judgment against Sander determined that plaintiff was entitled to recover from an uninsured motorist and established the amount she was entitled to recover. State Farm cannot now say, after receiving due notice of the action brought against Sander and opportunity to participate in settlement negotiations, that it is entitled to litigate those issues when it is obligated by law to pay that which has already been determined. We therefore conclude the

question of damages and legal liability of the uninsured motorist may not be relitigated in the present action and that the judgment against Sander is conclusive of the issues determined therein. *See Boughton v. Farmers Ins. Exch.,* 354 P.2d 1085, 1090 (Okl.1960).

4. Implicit in the court's reasoning is that Hughes and Sander are joint tortfeasors.

those recovered from the owner or operator of an insured vehicle. The payment contemplated by the statute "is that which is made because the insured was injured by someone or an organization which was uninsured." Plaintiff also argues that there is not any authority for the district court's statement that uninsured motorist coverage is to be the source of recovery only where no other source exists.

The language of Section 26–02–44 in many respects is not unique; similarly worded legislation has been adopted in many states. Its purpose is to insure subrogation rights of an insurer making a payment under uninsured motorist coverage. A. Widiss, *supra* § 3.10, app. B 3, at 313. Plaintiff's interpretation of the statute is supported by *Hebert v. Green*, 311 So.2d 223 (La.1975), in which the court held an insurer's right to recoup payment was against the uninsured motorist and not a right against that motorist's insured co-tortfeasor. *Id.* at 228–29. Otherwise, the legislative aim that insurers be responsible for damages caused insureds by uninsured motorists would be frustrated.

The Minnesota Supreme Court reached a similar result in *Milbank Mut. Ins. Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974). There the court construed the following statute:

> In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer.

*Id.* at 232.

The insurer argued on the basis of the above statute that it was subrogated to the proceeds of a settlement its insured made with a liquor vendor allegedly liable under Minnesota's Civil Damage Act. The insured had not been fully compensated for her injuries. The Minnesota court implicitly acknowledged the broad language of the statute, but construed it to mean that an uninsured motorist liability carrier does not have the right to be subrogated to the proceeds of a settlement of its policyholder with a party commonly liable with the uninsured motorist. The court noted that subrogation would permit the insurance company to avoid its statutory obligation to provide uninsured motorist coverage. The court reasoned that if the insurer were subrogated to the proceeds of any recovery by its insured from any person or organization commonly liable with the uninsured motorist, the insured would be in a worse position than she would have been in had the negligent motorist been insured, even though the possibility that the motorist would not be insured was the basis for the legislative mandate. The court would not countenance "[such] an absurd or unreasonable result." *Id.* To the same effect see *American Mut. Ins. Co. v. Romero*, 428 F.2d 870 (10th Cir. 1970) (policy provision); *White v. Nationwide Mut. Ins. Co.*, 361 F.2d 785 (4th Cir. 1966) (statute); *Sellers v. United States Fidelity & Guar. Co.*, 185 So.2d 689 (Fla. 1966) (statute); *Capps v. Klebs*, 382 N.E.2d 947 (Ind.App.1978) (statute); *Wescott v. Allstate Ins.*, 397 A.2d 156 (Me.1979) (statute); *Raitt v. National Grange Mut. Ins. Co.*, 111 N.H. 397, 285 A.2d 799 (1971) (statute); *Shamey v. State Farm Mut. Auto. Ins. Co.*, 229 Pa.Super. 215, 331 A.2d 498 (1974) (statute). *Cf. State Auto Ins. Co. v. Cummings*, 519 S.W.2d 773 (Tenn.1975) (statute worded differently); *Security Nat'l Ins. Co. v. Hand*, 31 Cal.App.3d 227, 107 Cal.Rptr. 439 (1973) (statute worded differently, rationale the same). *See generally* A. Widiss, *supra*, at § 5.11. *Contra, Traders & Gen. Ins. Co. v. Reynolds*, 477 S.W.2d 937 (Tex.Civ.App.1972). *See also Michigan Mut. Liab. Co. v. Karsten*, 13 Mich.App. 46, 163 N.W.2d 670 (1968). In essence, we find the overwhelming weight of authority contrary to the interpretation given to the statute by the district court. As courts have noted, the construction advocated by State Farm here would allow an insurer to

avoid completely its statutory duty, to which there are no exceptions, to provide uninsured motorist coverage.

The North Dakota statute, N.D.Cent. Code Section 26–02–42, likewise contains no exceptions.[5] State Farm, however, argues on the basis of rules of statutory construction that Section 26–02–44, unlike similarly worded statutes in other jurisdictions, excepts from its operation the State's unsatisfied judgment fund. Relying on the doctrine *expressio unius est exclusio alterius,*[6] State Farm contends the unsatisfied judgment fund is the only exception to the broad unambiguous language of Section 26–02–44. State Farm buttresses its argument by reference to the meager legislative history of Section 26–02–42 to Section 26–02–44, which indicates that such legislation would substitute uninsured motorist insurance for the unsatisfied judgment fund. Since legislation establishing the unsatisfied judgment fund provided that no payment would be made from the fund when a collection was made by an injured party from "any source" if the amount collected was at least equal to the limits payable from the fund. State Farm thus contends that recovery under uninsured motorist insurance should be similarly restricted, that is, once the insured collects the minimum amount of $10,000, further recovery is precluded.

It is true that the unsatisfied judgment fund serves as a source of recovery only as a last resort. N.D.Cent.Code § 39–17–07. It does not necessarily follow, however, that recovery under uninsured motorist insurance should be similarly restricted. Different policy considerations are present when the source of recovery is an insurance company rather than the unsatisfied judgment fund. The minimum recovery contemplated by the unsatisfied judgment fund is a means of resolving the tension between the State's concern that persons injured by un-

insured motorists are fully compensated for their injuries and the State's limited resources to effectuate that concern.[7] By enacting compulsory uninsured motorist coverage, the legislature transferred the burden of compensating for injuries that would otherwise go without redress from the unsatisfied judgment fund to insurance companies who, through their rate structure, are able to spread the risk of loss among their insureds. Thus the reason for the minimum recovery applicable to payments from the unsatisfied judgment fund is not applicable to recoveries from insurers under uninsured motorist coverage.

We find the construction given Section 26–02–44 by the district court conflicts with the policy mandate of Section 26–02–42. The latter section provides that no automobile liability policy shall be issued unless it provides coverage in statutorily set minimum amounts for persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. The statute does not say that each insured shall have access to the minimum statutory amount to compensate for losses caused by an uninsured motorist; it simply says that each policy shall provide such coverage. *See Wescott v. Allstate Ins.,* 397 A.2d 156 (Me.1979). State Farm's construction of Section 26–02–44 conflicts with the provisions of Section 26–02–42 in that an insurer could, under that construction, completely avoid its obligation to provide its insured with uninsured motorist protection whenever its insured recovered from any source an amount in excess of the policy limits provided for such coverage, whether or not the insured has been fully compensated for his injuries. Faced with a similar conflict the New Hampshire Supreme Court wrote:

> Unless the statute is [restricted to cases where the coverage would otherwise re-

---

5. The section is set out in full on page 575, *supra.*

6. The expression of one thing is the exclusion of another.

7. One of the reasons for enacting compulsory uninsured motorist coverage was to provide relief to the financially beleaguered unsatisfied judgment fund. The committee minutes to Section 26–02–44 state that the fund had no money to pay judgments which approached $200,000.

sult in overlapping recovery by the injured party], the carrier obligated to furnish uninsured motorist coverage would be subsidized at the expense of its insured, by appropriation of his recovery from an insured third-party motorist, without regard to the former's prior and complete indemnification. This interpretation of the statute would result in nullification of the established legislative purpose to provide a minimum of $10,000 of uninsured motorist coverage and cannot be adopted. (Citations omitted) "Such provisions are justifiable where indemnification has been complete but their propriety seems highly suspect when invoked by an insurance company to avoid liability when a claimant has not been fully compensated." Widiss, *supra*, s. 8.1, at 283; see *Protective Fire & Cas. Co. v. Woten,* 186 Neb. 212, 181 N.W.2d 835, 838 (1970).

*Raitt v. National Grange Mut. Ins. Co.,* 285 A.2d at 802.

*Accord, Milbank Mut. Ins. Co. v. Kluver, supra.* Not only would the result contended for by State Farm nullify the insuring provision of Section 26–02–42; but, as the Minnesota Supreme Court noted:

> Furthermore, under that interpretation, defendant Kluver would be treated worse than she would have been treated had the negligent motorist here been insured even though the possibility that he would not be insured was the basis for the legislative mandate and her purpose for purchasing the insurance.

225 N.W.2d at 232.

The court concluded:

> [T]he overall purpose of the uninsured-motorist coverage statute was to provide policyholders such as the defendant in this case recovery for personal injuries but only to the extent necessary to permit the insured to recover his actual loss and not to such an extent that he would recover more than that loss.

*Id.*

In North Dakota conflicting provisions in statutes that cover the same subject matter must be considered together and should, if possible, be made to harmonize. *See United Dev. Corp. v. State Highway Dep't,* 133 N.W.2d 439, 443 (N.D.1965). Using this rule of construction, this court must construe Section 26–02–44 to mean that an uninsured motorist insurer does not have a right to recoup the proceeds of a settlement its insured makes with a party commonly or jointly liable with an insured tortfeasor where its insured has not been fully compensated for his injuries. Recoupment should be permitted only to the extent necessary to avoid double recovery. Such an interpretation gives effect to the insuring provision of Section 26–02–42, the purpose of which is to protect an insured motorist for damages inflicted by financially irresponsible motorists. *Tschider v. Burtts,* 149 N.W.2d 710, 712 (N.D.1967). By enacting Section 26–02–42 the North Dakota legislature has cast its lot in favor of compensating victims of negligent, financially irresponsible motorists.

### III. *Stacking.*

Under the terms of State Farm's policy, when two or more vehicles are insured under the policy its terms apply separately to each. The plaintiff reasons that since two snowmobiles were insured, by operation of Section 26–02–42 she had in effect two separate uninsured motorist insurance endorsements. She urges the court to view her policy, in light of Section 26–02–42, as two policies providing $10,000 each in uninsured motorist coverage. Therefore, she argues she is entitled to have these policies "stacked" to provide her $20,000 in coverage, the amount of her judgment against Sander. She relies upon the numerous cases which provide for recovery under uninsured motorist provisions in separate policies even though there may be only one accident and one vehicle involved in the accident. We note a split of authorities in the various states relating to this rule. *See* annot. 28 A.L.R.3d 551 (1969).

The district court reasoned that, assuming recovery, plaintiff could only recover $10,000, and that recovery could not be "stacked." The district court's decision

rests on its interpretation of N.D.Cent.Code Section 26–02–44 as providing that an insurer making payments under uninsured coverage was entitled to recoup the amount of the payments from the proceeds of any settlement or judgment recovered by the insured. The court reasoned that this clearly evinced legislative intent not to provide greater insurance protection than would have been available had the victim been injured by a motorist carrying the minimum amount of coverage required by North Dakota's financial responsibility laws. See N.D.Cent.Code § 39–16.1–11.

Although we agree with the district court that there should be no "stacking," and the plaintiff may only recover $10,000, we do so for reasons which differ somewhat from the analysis used by the district court.

The decisions on which plaintiff relies concern situations in which the plaintiff had actually purchased one or more policies providing uninsured motorist coverage. The cases turn on the interpretation of "other insurance" or "excess-escape" clauses, which many jurisdictions hold to be invalid when construed with the financial liability laws of the particular state. The decisions emphasize the fact that the insured paid premiums on each of the policies involved. See, e. g., Van Tassel v. Horace Mann Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973); Westphal v. Amco Ins. Co., 87 S.D. 404, 209 N.W.2d 555 (1973); Stephens v. Allied Mut. Ins. Co., 182 Neb. 562, 156 N.W.2d 133 (1968). Noting that the "stacking" of policies results in permissible recovery exceeding what the insured would have received if the uninsured motorist had been insured for the minimum amount required by state law, the Minnesota Supreme Court stated:

> [I]f the question must be resolved on the basis of who gets a windfall, it seems more just that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.

Van Tassel v. Horace Mann Ins. Co., 207 N.W.2d at 352.

In the present case we deem it significant that any obligation on State Farm's part to pay for injuries inflicted on Mrs. Hughes by an uninsured motorist are imposed solely because of the statute. Mrs. Hughes did not purchase any uninsured motorist coverage for either snowmobile and State Farm has not collected premiums for such coverage. Thus the equities of "stacking" differ here from those involved in the cases on which plaintiff relies. The North Dakota legislature felt it to be sound public policy to provide recovery in the amount of $10,000 for death or bodily injury to one person in one accident.[8] Accordingly, State Farm must provide Mrs. Hughes that coverage, regardless of whether she chose to purchase uninsured coverage. Here the statute alone controls the insurer's obligation to pay, and not a policy under which the insurer collected premiums in return for its agreement to provide coverage. We see no reason to impose liability on the insurer beyond the minimal amount required by statute.

We therefore need not pass on the question of whether "stacking" would be allowed under the laws of North Dakota if in fact an insured had purchased uninsured motorist coverage in a policy covering two automobiles.

Judgment is reversed and remanded with directions to enter judgment against State Farm in the sum of $10,000.00.

---

8. Section 26–02–42 states the minimal coverage that need be provided is that set forth in Section 39–16.1–11 which reads as follows:

> [T]en thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and five thousand dollars because of injury to or destruction of property of others in any one accident.