Opinion
 

 HASTINGS, J.
 

 This is an appeal from a declaratory relief judgment in favor of respondent State Farm Mutual Automobile Insurance Company (State Farm) which holds that State Farm had no obligation to the appellants Gilbert Herron, Jeannine Herron Marsh burn and Pamela Herron Lanman under an uninsured motorist coverage provision.
 

 On November 5, 1971, Adele Herron was a passenger in a Volkswagen owned and operated by Frank Repine. This vehicle was involved in a collision with an uninsured motorist. The accident occurred (for the purpose of this appeal) due to the joint negligence of Repine and the uninsured motorist. On November 18, 1971, Adele Herron died as a result of the injuries sustained by her in the accident. She left surviving her two children and a husband.
 

 The Herron family had a policy of insurance with State Farm, as did the Repine family. State Farm paid the heirs (appellants) of Adele Herron $15,000 to release a liability claim against Frank and Mary Repine. Another $2,000 was paid by State Farm to Gilbert Herron in return for a release of any claim of medical payments coverage provided by the Repine policy.
 

 
 *676
 
 Thereafter, appellants made a demand upon State Farm for the payment of $13,000 alleged to be due under the uninsured motorist provision of the Herron policy. State Farm advised appellants that they had no further claim against State Farm for any sum because it had paid all claims as required by the policies. State Farm then filed the present action for declaratory relief and prevailed.
 

 Later, appellants claimed they were entitled to $13,000 (or portion thereof as explained,
 
 infra)
 
 under the uninsured motorist provisions of both policies (Herron and Repine). However, at time of trial they agreed their claim was only against the Repine policy.
 
 [1]
 
 Their actual claim is for any excess damages over $15,000, to be subsequently determined by arbitration, up to $13,000.
 

 There are no findings of facts or conclusions of law but the reasoning of the trial court is spelled out in its announcement of intended decision. After noting'that appellants had dropped any claim under the Herron policy
 
 [2]
 
 and were looking to the Repine policy, the court stated: “The Repine policy would provide uninsured motorist coverage of $15,000.00 for the death of Mrs. Herron, unless, . .. such amount is reduced by the $15,000.00 already paid to the heirs under the liability coverage.
 

 
 *677
 
 “The provision relied upon by State Farm ... in the Repine policy . . . [is] under the heading ‘Limits of Liability.’ Subparagraph (b) reads, in part
 

 ‘(b) Any amount payable under this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by:
 

 ‘(1) All sums paid on account of such bodily injury by or on behalf of
 

 ‘(i) the owner or operator of the uninsured motor vehicle and
 

 ‘(ii) Any other person or organization jointly or severally liable together with such owner or operator for such bodily injury
 
 including all sums paid under Coverage A;
 
 ...’ (Italics added.)
 

 “State Farm has paid to the heirs the sum of $15,000.00 ... on behalf of Mr. Repine, the driver of the Repine car. If negligent, Mr. Repine was jointly liable with the operator of the uninsured motor vehicle. The quoted provision of the policy clearly states that the amount payable under the uninsured motorist coverage . . . ‘shall be reduced by’ the amount paid on behalf of Mr. Repine under Coverage A, .... After making such a reduction, nothing remains payable under the uninsured motorist coverage.”
 

 We agree with the trial court that the language permitting the offset of $15,000 against the amount payable under the
 
 uninsured motorist coverage
 
 is clear and unambiguous and therefore controlling. An insurance policy is but a contract; and, like all other contracts it must be construed from the language used; when the terms are plain and unambiguous, it is the duty of courts to enforce the agreement.
 
 (Farmers Ins. Exch.
 
 v.
 
 Harmon,
 
 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].)
 

 Of further importance is the fact that the reduction is authorized by paragraph (3) of Insurance Code section 11580.2, subdivision (h) (in effect at the time of the accident). It provided in pertinent part:
 

 “(h) . . . Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced":
 

 "
 

 
 *678
 
 “(3) By the amount the insured is entitled to recover from any other person insured under the underlying liability insurance policy of which the uninsured motorist endorsement or coverage is a part.”
 

 The rationale for the above Insurance Code section is succinctly stated in the 1973 California Continuing Education of the Bar publication, California Uninsured Motorist Practice. Section 1.68, pages 50-51, states:
 

 “The reduction authorized by paragraph (3) of Ins C §11580.2(h) . . . relating to amounts recoverable from any other person insured under the policy in question is often designated the ‘double liability’ setoff. The purpose of this reduction is to provide the insurer with a means of protecting itself from having to pay any amount under the uninsured motorist coverage that the claimant [here the Herrons] is entitled to recover under the conventional bodily injury liability coverage in the same policy.
 

 “For instance, if a rider in an insured vehicle is injured in an accident with a vehicle owned or operated by an uninsured motorist in which both drivers were negligent, he can file a tort action against his driver and, as an insured under his driver’s uninsured motorist coverage, also file a claim against his driver’s insurer. Under Ins C §11580.2(h)(3) the insurer, if the policy so provides, may deduct any amount recovered by the rider in the tort action from the loss payable under the uninsured motorist coverage. [Citation.]”
 

 Also stated at section 6.8, page 191 of the California Continuing Education of the Bar publication is the following: “The ‘double liability’ setoff could also apply to a wrongful death claim. If a rider’s death is caused by the combined misfeasance of his host driver and the driver of an uninsured vehicle, the amount recoverable by his heirs for wrongful death under the uninsured motorist provisions of the host’s policy is subject to reduction by the amount the heirs are entitled to recover from the host under his general liability coverage.”
 

 Appellants state that the trial court’s decision is contra to the holding in
 
 Security Nat. Ins. Co.
 
 v.
 
 Hand,
 
 31 Cal.App.3d 227 [107 Cal.Rptr. 439].
 

 In
 
 Security Nat. Ins. Co.
 
 v.
 
 Hand,
 
 the driver Norman Hand was operating a motor vehicle in which his wife Margaret was a passenger.
 
 *679
 
 There was a traffic collision with two other vehicles, one of which was insured by Mercury Casualty Insurance Company with $15,000/$30,000 limits and the other vehicle was uninsured. As a result of the accident, Mrs. Hand was killed and Mr. Hand received serious injuries. The Mercury Casualty Insurance Company paid the heirs of Mrs. Hand $15,000 (precisely the same situation as exists in this case); and the Security National Insurance Company (Mr. Hand’s carrier) paid $500 funeral expenses on account of Mrs. Hand and $500 medical payments on his own behalf.
 

 The Hands then filed an uninsured motorist claim. The carrier Security National Insurance Company brought a declaratory relief action as to the applicability of the uninsured motorist provisions in light of the conditions in the Security policy and in light of section 11580.2 of the Insurance Code.
 

 This court held that where the insured motorist and his passenger wife were involved in a three-car accident as a result of the combined negligence of the other two drivers, one of which was an uninsured motorist and one of which had insurance with $30,000 limits, which was the same as the uninsured motorist coverage
 
 that the insurer of the motorist’s own policy
 
 was not discharged from its obligation to pay the limits of the uninsured motorist insurance even though the third party limits of $30,000 were already collected.
 

 The two cases vary in one important fact. Mrs. Herron was occupying a nonowned automobile and her heirs (appellants) are seeking uninsured coverage from the automobile owner’s policy.
 
 [3]
 
 In
 
 Hand,
 
 Mr. Hand sought recovery
 
 under his own policy.
 
 Two questions posed by the
 
 Hand
 
 court emphasized the distinction between the two cases. They were: “The issue which divides the parties can be posed in terms of the purpose of section 11580.2: was it intended that if the motorist who has paid his premium for UMC and whose damages are far in excess of the minimum statutory and policy limits for that coverage has been partly made whole by a concurrent tortfeasor, the UMC never comes into play?
 
 *680
 
 Or, was it the intent of the Legislature that to the extent that the injured motorist who has purchased UMC cannot be made whole because of the financial irresponsibility of some'of those who caused his loss, the UMC should fill the gap to the extent of its monetary limits?” (31 Cal.App.3d at p. 232.) Appellant deceased made no payments on the Repine policy. Furthermore, the court was interpreting subdivision (g) of section 11580.2 and not subdivision (h).
 

 The judgment is affirmed.
 

 Kaus, P. J„ and Stephens, J., concurred.
 

 [1]
 

 Appellants’ (defendants’) trial brief stated: “Defendants concede for the purpose of this hearing that the defendant is not entitled to recover under both the Herron uninsured motorist provisions and the Repine uninsured motorist provisions. In its brief, State Farm admits that the Repine policy would apply to this case. On page 26 of its brief the plaintiff states: ‘State Farm acknowledges that the uninsured motorist coverage was “available” to the Herrons under the Repine policy.’ We will accept the stipulation of State Farm and eliminate the Herron policy as a source of coverage.” The trial court, in its memorandum opinion, states that an exclusionary clause in the Herron policy dictated appellant’s action. (See fn. 2,
 
 infra.)
 

 [2]
 

 According to the court, appellants dropped their claim under this policy because of a clause in the policy that denied them recovery. The court’s announcement of intended decision states: “The heirs originally made a demand under the Herron policy. However, defendants’ Trial Brief concedes that they are not entitled to recover under the uninsured motorist provisions of both policies. Defendants agree to ‘eliminate the Herron policy as a source of coverage.’ That position is dictated by the ‘Other Insurance’ provision of the Herron policy which states: ‘With respect to bodily injury to an insured while occupying an automobile now owned by a named insured under this coverage, the insurance hereunder shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.’ [1] The limit of the uninsured motorist coverage in each policy—Repine and Herron—was $15,000.00 for bodily injury to one person. Therefore, under the clause quoted, the Herron policy provides no coverage in excess of the limit of the Repine policy.” (See Ins. Code, § 11580.2. subd. (c)(2) authorizing this exclusion in the policy.)
 

 [3]
 

 After this appeal was filed,
 
 California State Auto Assn.
 
 v.
 
 Huddleston,
 
 68 Cal.App.3d 1061 [137 Cal.Rptr. 690], was decided. The facts were similar to this case and plaintiff was entitled to recover under his own policy.
 
 Huddleston,
 
 however, was tried on a different theory. Here, the trial court agreed that plaintiff probably had no cause of action against his own policy because of the exception contained therein (see fn. 2,
 
 ante)
 
 and properly proceeded only against the Repine policy. We have no indication that a similar situation existed in
 
 Huddleston.