[Civ. No. 54602. Second Dist., Div. Three. July 24, 1979.]

INTERINSURANCE EXCHANGE OF THE AUTOMOBILE
CLUB OF SOUTHERN CALIFORNIA, Plaintiff and Appellant, v.
GABRIEL ALCIVAR et al., Defendants and Respondents.

**COUNSEL**

Horvitz, Greines & Poster, Chris S. Rellas, Marc J. Poster and Barry R. Levy for Plaintiff and Appellant.

Volodar S. Kuzyk and Joseph B. Alexander for Defendants and Respondents.

## OPINION

**POTTER, Acting P. J.**—Plaintiff, Interinsurance Exchange of the Automobile Club of Southern California, appeals from an adverse judgment rendered in its declaratory relief action against defendants Gabriel Alcivar, Myrna Alcivar, and Olga Samkow. The judgment declares that Myrna Alcivar and Olga Samkow "are entitled to uninsured motorist coverage benefits under their insurance policies issued by plaintiff."

The facts are not in dispute. Myrna Alcivar and Olga Samkow sustained personal injuries in a collision between an automobile driven by Emilia Samkow and another vehicle driven by John Udell. Both drivers were negligent. Udell and his vehicle were uninsured. Emilia Samkow and her automobile were insured by Farmers Insurance Company under a policy (hereinafter Farmers policy) which provided personal injury and uninsured motorist coverage each with policy limits of $15,000 on account of injury to any one person, and $30,000 on account of personal injury arising out of any one accident. Emilia Samkow and two other passengers also sustained injuries.

Farmers filed its complaint in intervention setting forth the above facts concerning the coverage and deposited a total of $60,000 in satisfaction of its obligation under the policy. The deposited funds were distributed pursuant to a stipulation between the parties to the interpleader action. After a deduction of $250 for Farmers' court costs and fees, the funds were distributed 50 percent ($29,875) to Olga Samkow, 20.8334 percent ($12,447.96) to Emilia Samkow, 25 percent ($14,937.50) to Myrna Alcivar, and the remainder to the two other passengers in the insured vehicle. The stipulated judgment in the interpleader action expressly provided that "the money awarded to Olga Samkow is entirely from the liability portion of the Farmers' policy and the money awarded to the other claimants is entirely from the uninsured motorist portion of said policy."

The damages sustained by defendant Olga Samkow exceeded the sum of $29,875 received by her and the damages suffered by defendant Myrna Alcivar exceeded the sum of $14,937.50 received by her.

Defendants Olga Samkow and Myrna Alcivar each were insured under separate policies by plaintiff. Both of these policies contained uninsured motorist coverage with policy limits of $15,000 per person and $30,000 per accident as required by Insurance Code section 11580.2.[1]

Both of the policies issued by plaintiff also contained a provision as follows: "IV: (a)With respect to bodily injury to any insured while occupying an automobile other than an automobile described in the declarations, the insurance afforded by this Part shall not apply if the owner of such automobile has insurance similar to that provided by this Part; . . ."

This provision was expressly authorized by section 11580.2, subdivision (c)(2).

Defendants Alcivar and Samkow each claimed that they were entitled to uninsured motorist coverage under the policies issued by plaintiff. The complaint sought a declaration that said policies did not afford coverage to the defendants for their injuries sustained while passengers in the vehicle which was covered by the Farmers policy.

After finding the facts as above stated, the trial court made further "findings" as follows:

"14. The issue involved narrowly is whether the fact that when the Farmers' policy has paid the full policy limits and there is remaining damages, is there 'other insurance' within the meaning of the exclusion clause and the Insurance Code.

"15. This Court finds that there is no 'other insurance' within the meaning of the clauses of the policies issued by plaintiff nor Insurance Code Section 11580.2(c)(2)."

From these "findings," the court concluded:

---

[1]Hereinafter all statutory references are to the Insurance Code unless otherwise stated.

Section 11580.2, subdivision (a)(1), requires uninsured motorist coverage with "limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code. . . ."

Section 16056 of the Vehicle Code imposes a financial responsibility requirement of $15,000 "because of bodily injury to or death of one person in any one accident," and $30,000 "because of bodily injury to or death of two or more persons in any one accident. . . ."

"1. The reasoning and decision in *Security National Insurance Co. v. Hand,* 31 Cal.App.[3d] 227 are controlling.

"2. Defendants are entitled to a judgment declaring they are entitled to UMC benefits under their insurance policies issued by plaintiff."

## Contentions

Plaintiff contends that (1) under the express terms of its policies, defendants were expressly excluded from uninsured motorist coverage while in an automobile not described in the policy which had uninsured motorist coverage similar to that provided by defendants' policies, and (2) the fact that the proceeds of the uninsured motorist coverage of such nondescribed automobile were inadequate to fully compensate defendants for their injuries does not negate such exclusion.

Defendant Olga Samkow[2] contends that (1) the trial court correctly concluded that there was no "other insurance" because she had "no available uninsured motorist coverage other than her own" and " 'received' no uninsured motorist proceeds whatsoever," and (2) the "public policy of the remedial statutory arrangement for mandatory UMC protection requires that she be 'made whole.' "

## Discussion

### Summary

Plaintiff's policies validly withheld uninsured motorist coverage for defendants. They were insureds within the uninsured motorist coverage of the Farmers policy. The uninsured motorist coverage under the Farmers policy was similar to that provided by plaintiff's policies. Uninsured motorist benefits comparable to those which would be payable under plaintiff's policies were paid and received pursuant to the Farmers policy. The fact that these benefits did not fully compensate defendants for their injuries is insufficient to negate the effect of the exclusion. Consequently, the judgment must be reversed.

[2]Defendants Gabriel and Myrna Alcivar have not appeared as respondents in this appeal and have made no attempt to support the judgment of the trial court.

### ▌ *Plaintiff's Policy Provisions Are Valid and Effective to Withhold Coverage*

Plaintiff's policy provision is substantially in the language of the statutory authorization. Section 11580.2, subdivision (c)(2), authorizes provisions that the uninsured motorist coverage shall not apply "[t]o bodily injury of the insured while in . . . an automobile other than the described automobile if the owner thereof has insurance similar to that provided in this section." Plaintiff's policy provision provides with respect to the uninsured motorist coverage that it shall not apply "to bodily injury to any insured while occupying an automobile other than an automobile described in the declarations . . . if the owner of such automobile has insurance similar to that provided by this Part; . . ."

In *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243 [66 Cal.Rptr. 374], policy language substantially identical to that employed by plaintiff was held effective to withhold coverage where the policy covering the occupied vehicle provided uninsured motorist coverage with the same policy limits as those of the policies at issue. In so holding, the court said (*id.,* at pp. 246-247):

"Furthermore, there can be no doubt of the right of the insurance companies to limit, in accordance with section 11580.2, the coverage of their policies, and when they have done so the plain language of the limitations must be respected. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; *Hendricks* v. *Meritplan Ins. Co.,* 205 Cal.App.2d 133, 137 [22 Cal.Rptr. 682].) And when the terms of an insurance policy are plain and explicit, the court will indulge in no forced construction so as to cast unassumed liability on an insurance company. (*Jensen* v. *Traders & General Ins. Co.,* 52 Cal.2d 786, 791 [345 P.2d 1]; *Lewis* v. *Fidelity & Cas. Co.,* 207 Cal.App.2d 160, 162 [24 Cal.Rptr. 388].)

"Here the Wheatley and Darrah policies constituted insurance similar to that held by Rehm, the owner of the car occupied by them at the time of the accident. By the plain language of those policies their 'uninsured motorist' provisions did not apply. A similar conclusion was reached in the cases of *Phoenix Assur. Co.* v. *Larsen,* 240 Cal.App.2d 94 [50 Cal.Rptr. 111]; *Kirby* v. *Ohio Cas. Ins. Co.,* 232 Cal.App.2d 9 [42

Cal.Rptr. 509]; and *Grunfeld* v. *Pacific Auto. Ins. Co., supra,* 232 Cal.App.2d 4 [42 Cal.Rptr. 516].

"Wheatley and Darrah recognize that the holdings of *Phoenix, supra, Kirby, supra,* and *Grunfeld, supra,* are contrary to their contentions here. They insist, however, that these 'authorities should be overruled because of the court's failure to recognize the ambiguity in the meaning of the term "similar insurance" ' of section 11580.2. We see no ambiguity. The word 'similar' is defined as ' "Nearly corresponding; resembling in many respects; somewhat like; having a general likeness," ' and as ' "having characteristics in common; very much alike; comparable; . . . alike in substance or structure; identical. . . ." ' (*Plum* v. *City of Healdsburg,* 237 Cal.App.2d 308, 317 [46 Cal.Rptr. 827].)

". . . . . . . . . . . . . . . . . . .

"Finally, Wheatley and Darrah insist that we apply the well-known rule that any ambiguity or uncertainty of an insurance policy will be construed against the insurer which caused the ambiguity to exist. Even if we were to find an ambiguity that rule would not be fairly applicable here. The policy's language under discussion is not the choice of the insurance companies. It is substantially the language of the Legislature as expressed in section 11580.2."

There is, therefore, no room for defendants to argue that plaintiff's policy provision does not clearly withhold coverage if similar uninsured motorist coverage was provided under the Farmers policy.

*The Uninsured Motorist Coverage*
*Provided by the Farmers*
*Policy Was Similar to that Provided*
*by Defendants' Policies*

It is apparent that the uninsured motorist coverage under defendants' policies and under the Farmers policy were substantially the same. Defendants do not contend to the contrary. Both policies provided coverage with policy limits of $15,000 per person and $30,000 per accident when an insured was injured as a result of the operation of the uninsured Udell vehicle. The Farmers policy was, therefore, "insurance similar to that provided by this Part" within the provision of plaintiff's policies.

### ■ Defendants Were Insureds Within the Uninsured Motorist Coverage of the Farmers Policy

By operation of law, the Farmers policy included a provision making defendants insureds within the uninsured motorist coverage of such policy. Section 11580.2 requires all such liability policies to extend uninsured motorist coverage to "the insured" and in subdivision (b) defines "insured" to include "any other person while in or upon or entering into or alighting from an insured motor vehicle. . . ."

Under the stipulated facts, defendants were in the vehicle insured under the Farmers policy and were injured as a result of the joint negligence of the driver of that vehicle and an uninsured motorist. Consequently, they clearly came within the uninsured motorist coverage of the Farmers policy.

### Uninsured Motorist Coverage Benefits Were Paid to Defendants Under the Farmers Policy

Defendant Myrna Alcivar has not denied receipt of uninsured motorist coverage benefits under the Farmers policy. But defendant Samkow does claim that she has received no uninsured motorist proceeds and has had no available uninsured motorist coverage other than her own. The basis of defendant Samkow's claim in this respect is the stipulation of the parties to the Farmers interpleader action which is quoted in the trial court's finding No. 8. It is important to note that the court did not find that the facts were in accordance with said stipulation, only that the stipulated judgment recites that " 'the money awarded to OLGA SAMKOW is entirely from the liability portion of the Farmers' policy. . . .' " Moreover, it is apparent that the court had no basis upon which it could have found that as a matter of fact defendant Samkow had received no proceeds from the uninsured motorist portion of the proceeds of the Farmers policy.

■ Plaintiff was not a party to the stipulation, nor even a party to the proceeding in which the stipulation was made. Consequently, the stipulation is in no respect binding upon it. Furthermore, it is apparent that the stipulation is contrary to fact. Defendant Samkow received $29,875 from the total insurance proceeds of $60,000, representing the

policy limits under both the liability and uninsured motorist coverage of the Farmers policy. The policy limits under either coverage for each injured person were $15,000. Thus, any amount received by defendant Samkow over $15,000 was either a gift from Farmers or was paid under the uninsured motorist coverage. There was no gift; Farmers' interpleader complaint states that the funds deposited represent "the maximum due defendants for personal injury . . . under the bodily injury coverage and . . . under the uninsured motorist coverage." It is thus apparent that defendant Samkow has received not less than $14,875 of uninsured motorist proceeds.

In any event, if the stipulation resulted in defendant Samkow receiving no uninsured motorist proceeds, it was because she chose not to, in return for receiving more than she was entitled to receive under the liability coverage of the Farmers policy. She cannot, on that basis, claim that uninsured motorist coverage was not available to her.

### The Fact That Defendants Are Not Made Whole Does Not Negate Plaintiff's Policy Provision

It is apparent that defendants have not been made whole with respect to their losses sustained in the accident to which the uninsured motorist's fault contributed. Defendant Samkow contends that the policy of the remedial statutory provisions for mandatory uninsured motorist protection "requires that she be 'made whole'" and that plaintiff's policy provision must, therefore, be construed so as to promote that policy by making available uninsured motorist coverage under defendant's policy. No authority supports this contention, and it is contrary to the decided cases.

*Darrah* v. *California State Automobile Assn., supra*, 259 Cal.App.2d 243, involved a situation where the uninsured motorist coverage provided by the owner's policy was inadequate to make the passengers whole. The policy limits under the owner's policy were $10,000 as to any one claimant and $20,000 as to any one accident. The damages exceeded these limits. As the court said (*id.*, at p. 245): "Rehm's widow, Wheatley and Darrah made claims for damages pursuant to the uninsured motorist provisions of the Rehm policy. Together these claims were for damages reasonably in excess of the $20,000 limits of the policy, and separately, each exceeded $10,000."

The uninsured motorist proceeds received by Wheatley and Darrah fell far short of making them whole,[3] yet the court held that the clear language of the exclusion made the uninsured motorist coverage under their own policies inapplicable.

To reach the contrary result, defendants, like the trial court, rely upon the decisions in *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439], cited by the trial court, and *California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston* (1977) 68 Cal.App.3d 1061 [137 Cal.Rptr. 690]. Neither of these cases is apposite.

In *Hand,* the insurance claimant was a motorist who was involved in a three-car collision. His damages were in excess of $30,000 and were caused by the concurrent negligence of the other two drivers. One of these drivers had liability insurance coverage with a $15,000 per person limit. The other driver and his vehicle were uninsured. With his insurer's consent, the claimant collected $15,000 from the other insured driver's insurer. There was no possibility that any portion of this award could be the proceeds of uninsured motorist coverage under the other driver's policy since the claimant was not an insured under that policy (i.e., he was not an occupant of that vehicle). The basis of the insurer's denial of claimant's uninsured motorist claim under his own policy was that the right to such coverage was taken away by the provisions of subdivision (g) of section 11580.2, subrogating the insurer paying a claim under uninsured motorist endorsement to the rights of the insured to whom such claim was paid against any person causing such injury to the extent that payment was made. The court held that the subrogation provision did not thus nullify the insuring provision, saying in this respect (*id.,* at p. 232): "Unless, by language that is 'conspicuous, plain and clear' the subrogation provisions of subdivision (g) nullify the insuring provisions of the statute and the policy, the subdivision simply cannot have the effect contended for by Security. (*Gray* v. *Zurich Insurance Co.,* 65 Cal.2d 263, 273 [54 Cal.Rptr. 104, 419 P.2d 168]; *Oil Base, Inc.* v. *Continental Cas. Co.,* 271 Cal.App.2d 379, 388-389 [76 Cal.Rptr. 594]. See also *Steven* v. *Fidelity & Casualty Co.,* 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].)"

The court did refer to a presumed intent of the Legislature that "to the extent that the injured motorist who has purchased UMC cannot be made

---

[3]According to footnote 1 on page 245 of the opinion, "Wheatley and Darrah received $4,500 and $2,500, respectively, under the Rehm policy."

whole because of the financial irresponsibility of some of those who caused his loss, the UMC should fill the gap to the extent of its monetary limits." (*Ibid.*) This comment was made, however, in a context where there was no uninsured motorist coverage other than that contained in the injured motorist's own policy. It does not ascribe any general intent to the Legislature that parties injured by uninsured motorists be "made whole" nor does it have any bearing on the situation where, as here, uninsured motorist coverage has in fact been utilized to "fill the gap to the extent of its monetary limits" (*ibid.*) under the Farmers policy.

In further explanation of its holding, the court said (31 Cal.App.3d at pp. 235-236): "In our case claimants were damaged by two tortfeasors, one insured, the other not. In law the uninsured driver is fully liable for all of claimants' damages, as if the insured driver were not even in the picture. This is precisely the kind of liability which UMC is all about. [Fn. omitted.]"

Taken together, the comments of the court make clear that the situation found inconsistent with the policy of the mandatory uninsured motorist law was one in which no insurance proceeds were payable on account of the joint and several liability of the uninsured motorist which existed independently of the liability of the insured driver. As above pointed out, no such situation exists in the case at bench where $30,000 of insurance proceeds have been paid on account of the uninsured motorist's liability.

*California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston, supra,* 68 Cal.App.3d 1061, is also distinguishable from the case at bench. In *Huddleston,* the insurer sought declaratory relief against the wrongful death heirs of its insured who was killed while a passenger in an automobile driven by Krueger, in a collision with a car driven by Hay. Krueger and his automobile were insured by INA. Neither Hay nor his automobile were covered by any insurance. The accident was the result of the concurrent negligence of Hay and Krueger. A wrongful death claim against Krueger had resulted in the payment by INA "on behalf of Krueger its policy limits of $15,000 under the third party liability portion of the policy." (*Id.,* at p. 1063.) Without first ascertaining whether or to what extent INA would make any further payment under the uninsured motorist coverage of the Krueger policy, the wrongful death heirs made claim under the uninsured motorist coverage of their family policy which included the deceased as an insured. The insurer sued for a declaratory

judgment that its uninsured motorist coverage was not applicable, relying upon an "other insurance" provision. It was stipulated that the wrongful death heirs' damage exceeded $30,000.

The wrongful death heirs contended that the INA policy did not provide any uninsured motorist coverage because INA had paid up to the limits of its policy under the third-party liability coverage and under policy provisions authorized by section 11580.2, subdivision (h), it was entitled to an offset reducing the amount of the uninsured motorist coverage by any amount "the insured is entitled to recover from any other person insured under the underlying liability insurance policy." The following passage from the opinion states the insurer's response to this contention (68 Cal.App.3d at p. 1065): "Plaintiff argues that the concurrent negligence of INA's insured does not change the uninsured motorist coverage. That insurer's uninsured motorist coverage is still primary. Plaintiff maintains *the fact that INA is entitled to an 'offset'* for payments made under the liability portion of its policy is one of the fundamental policies of Insurance Code section 11580.2." (Italics added.)

Thus, the insurer did not deny that INA was entitled to an offset as a result of which no uninsured motorist coverage proceeds would be available to compensate the heirs for Hay's negligence. According to the insurer, the heirs were responsible for this because they did not establish their uninsured motorist coverage against INA before asserting their wrongful death claim against INA's insured. The court rejected this attempt to shift the responsibility for the lack of coverage, saying (*id.,* at p. 1068, fn. 11): "Nor are we impressed by plaintiff's argument that defendants pursued the wrong remedy and the wrong party."

The trial court's judgment in favor of the insurer was reversed, the court holding (*id.,* at p. 1068): "Under our facts, to absolve or discharge plaintiff, defendants' insurer, from any obligation under the uninsured motorist coverage would be inequitable. This is precisely what the statute, and the policy issued under it, are for."

Discussing the "other insurance" provision of plaintiff's policy, the court said (*ibid.*): "This provision is commonly known as the '*excess insurance clause,*' and is partially designed to prevent double recovery in situations where more than one policy's uninsured motorist protection is involved. It also attempts to insure the carriers that no company will have to pay more than its fair share of the loss. (See Eisler [Cal. Uninsured

Motorist Law Handbook (2d ed.1976 supp.)] §§ 8.2 and 8.3, pp. 156-158.)

"In our situation, however, there is no possibility of double recovery. The fact is that the insured in our case has not been fully indemnified for his damages even though there is uninsured motorist coverage available, although it may be termed *'secondary.'* Moreover, it is quite possible that the uninsured motorist provisions of the INA policy do not even afford coverage to defendants since the insurer paid its policy limits under the liability portion of the policy and thus may be allowed an appropriate reduction in the amount payable under its uninsured motorist portion of the policy. In that event there is no excess insurance and section 11580.2, subdivision (c)(2), is not applicable." (Italics added.)

The court's characterization of plaintiff's policy provision as an " 'excess insurance clause' " and the reference to its uninsured motorist coverage as " 'secondary,' " plus the reference to Eisler, sections 8.2 and 8.3, make it clear that plaintiff's policy did not contain the full exclusion authorized by section 11580.2, subdivision (c)(2). As Eisler noted in section 8.3:

"As discussed in [7.3], subsection (c)(2) of the statute allows A's insurer to preclude coverage altogether where, as above, A is injured while riding in B's car if B's car has uninsured motorist coverage. . . .

"Most insurers include a more liberal alternative to (c)(2), providing for coverage under the *secondary policy* in cases where its maximum coverage is greater than the coverage on the involved automobile. The Standard Policy's *excess clause* reads as follows: With respect to bodily injury to an insured while occupying a highway vehicle not owned by the named insured, this insurance shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such vehicle as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance. (Appendix B)." (Italics added.) (Eisler, Cal. Uninsured Motorist Law Handbook (2d ed. 1974) § 8.3, p. 157.)

Thus, Eisler in his third edition (1979) notes in section 9.2, page 250, footnote 2: "Although the carrier in Huddleston did have an excess provision in its policy the opinion only makes reference to the Appellants' § 11580.2 (c)(2) contentions." In *State Farm Mut. Auto. Ins. Co. v. Herron*

(1977) 71 Cal.App.3d 673, 679, footnote 3 [139 Cal.Rptr. 575], Division Five of this court commented on *Huddleston* as follows: "After this appeal was filed, *California State Auto Assn.* v. *Huddleston,* 68 Cal.App.3d 1061 [137 Cal.Rptr. 690], was decided. The facts were similar to this case and plaintiff was entitled to recover under his own policy. *Huddleston,* however, was tried on a different theory. Here, the trial court agreed that plaintiff probably had no cause of action against his own policy because of the exception contained therein (see fn. 2, *ante*) and properly proceeded only against the Repine policy. *We have no indication that a similar situation existed in Huddleston.*" (Italics added.)

As the quoted portion, *supra,* from Eisler's second edition states, the situation is entirely different where the policy contains a provision which operates to "preclude coverage altogether" as authorized by section 11580.2, subdivision (c)(2). In his third edition, the author points out the effect of such a provision as follows:

"Where the injury is caused by an uninsured motorist while the insured is in or upon or entering into or alighting from an automobile other than the automobile described in his policy, the injured party cannot proceed against his own insurer on the uninsured motorist provision of his policy, if the owner of the occupied automobile has uninsured motorist coverage. Under subsection (c)(2), he must proceed against the owner's carrier.

"This provision is intended to prevent duplication of protection whereby one severely injured by an uninsured motorist while occupying another's insured automobile might claim a total of $30,000 of uninsured motorist coverage—$15,000 basic coverage under the owner's coverage plus $15,000 under his own policy. The intention of the California Legislature was to provide minimum statutory limits.

"When the legislature used the words 'similar insurance to that provided in this Section,' it did not 'propose those words to provide an injured guest the uninsured protection beyond the statutory amounts through a combination of the host's insurance and that owned by the guest himself.' *Kirby* v. *Ohio Cas. Ins. Co.* (1965) 232 Cal.App.2d 9, 13, 42 Cal.Rptr. 509, quoting with approval trial Judge Emil Gumpert.

Not only does (c)(2) prevent pyramiding of coverages; it also precludes any of several innocent parties injured while occupying the same insured vehicle from calling upon their own uninsured motorist coverage to supplement the vehicle owner's policy up to the basic minimum, so that

each might potentially have at least $15,000. *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 66 Cal.Rptr. 374. See also *Grunfeld* v. *Pacific Auto. Ins. Co.* (1965) 232 Cal.App.2d 4, 42 Cal.Rptr. 509; *Kirby; supra; Phoenix Assurance Co. of N. Y.* v. *Larsen* (1966) 240 Cal.App.2d 94, 50 Cal.Rptr. 111." (Eisler, Cal. Uninsured Motorist Law Handbook (3d ed. 1979) § 7.3, pp. 204-205.)

The opinion in *Huddleston,* therefore, simply did not deal with the situation where the policy provision takes full advantage of the exclusion authorized by section 11580.2, subdivision (c)(2). Furthermore, there was a real probability that there was no uninsured motorist coverage available at all under the INA policy, in view of the plaintiff's concession that the "offset" provision of the INA policy operated to limit its liability to the amount paid pursuant to the liability coverage. With that matter still unresolved, it would indeed have been "inequitable" to "absolve or discharge" the plaintiff in *Huddleston.*

Of course, no such situation exists in this case where uninsured motorist coverage to the full extent of the statutory requirement has been acknowledged and paid. Defendants contend, however, that since that coverage did not result in their being "made whole," the trial court judgment violated the policy of the mandatory uninsured motorist coverage law. They find this policy in the decisions in *Hand* and *Huddleston.* The opinion in *Hand* does make reference to a legislative intent "that to the extent that the injured motorist who has purchased UMC cannot be made whole because of the financial irresponsibility of some of those who caused his loss, the UMC should fill the gap to the extent of its monetary limits" (31 Cal.App.3d at p. 232) and in *Huddleston* the court referred to the insured's reliance upon "the 'very broad language in support of a liberal application of the uninsured motorist statute' used by the court in *Hand*" (68 Cal.App.3d at p. 1066) and found "the guiding principles set forth in *Hand* should control here" (*id.,* at p. 1068). Neither case suggests, however, that a clear provision implementing the exclusion authorized by section 11580.2, subdivision (c)(2), may be disregarded whenever the result of its application would be to preclude the insured from being "made whole."

Other authorities make it clear that the policy of the uninsured motorist law does not require that all injured parties are to be "made whole." In *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275], our Supreme Court pointed out that section

11580.2 "was designed to *minimize* losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists. . . ." (Italics added.) An injured party's losses are "minimized" under the law when he has received payment equivalent to that which would be payable had he been injured by a motorist with a liability policy containing minimum statutory limits. It was so held in *Mid-Century Ins. Co.* v. *Koch* (1970) 11 Cal.App.3d 1019 [90 Cal.Rptr. 280], where an injured party was denied recovery under two uninsured motorist coverages of policies of which he was an insured. The court said (*id.,* at p. 1023): "The law is not designed to provide the insured with greater insurance protection than would have been available had the insured been injured by an operator with a policy containing minimum statutory limits."

It is obvious that the policy of the Insurance Code generally does not go beyond that of providing benefits payable under a liability policy containing minimum statutory limits. These limits are not and never have been adequate to make injured parties whole. That does not mean, however, that additional coverage under the uninsured motorist provisions is intended whenever the coverage under a negligent party's policy is inadequate. For this reason, in *Travelers Ins. Co.* v. *Bouzer* (1974) 39 Cal.App.3d 992 [114 Cal.Rptr. 651], it was held that one of several victims who were injured by a party with minimum liability coverage did not have any uninsured motorist coverage under his own policy, despite the fact that the liability carrier had paid out so much to the other victims that the remainder was inadequate to make him whole. The court distinguished the situation in *Hand,* where there were no insurance proceeds payable on account of the negligence of the uninsured motorist, and in denying the insured's claim said (39 Cal.App.3d at p. 995): "To accept defendant's proposition would effectually convert uninsured motorist coverage into a policy of excess accident insurance, and not excess insurance with any fixed limits, but insurance 'open ended' at least to the limits of the uninsured motorist coverage. That is not the coverage for which the insured paid a premium, nor would it conform to any rational public policy. We hesitate to contemplate what premiums insured motorists would have to pay for uninsured motorist coverage should this court declare that to be the proper interpretation of the legislative intent.

"Although this appears to be a case of first impression in California, no authority in this state even hints at such a rule."

The policy of the uninsured motorist law is thus fully satisfied by making available coverage equal to the minimum statutory limits of $15,000 and $30,000 in respect of the liability of any uninsured motorist who has contributed to injuries of one or more victims, whether or not such coverage is adequate to compensate all such victims. That policy has been fully met in this case by Farmers' payment of $60,000, representing full policy limits under both its liability and its uninsured motorist coverage. The defendants are in no different position than they would have been had Udell (the uninsured driver) been insured under a policy containing minimum statutory limits. The statutory policy has, therefore, been fully satisfied and there is no occasion to disregard the clear language of plaintiff's policies excluding coverage.

The judgment is reversed, and the trial court is directed to enter a judgment in favor of plaintiff declaring that defendants are not entitled to uninsured motorist coverage benefits in respect of the injuries suffered in the collision between the Samkow and Udell automobiles under their insurance policies issued by plaintiff.

Cobey, J., and Allport, J., concurred.