[Civ. No. 48589. First Dist., Div. Four. Feb. 22, 1983.]

UNITED PACIFIC-RELIANCE INSURANCE COMPANIES,
Cross-complainant and Appellant, v.
GEORGE L. KELLY, Cross-defendant and Respondent.

**COUNSEL**

Wright, Nolan & Akin and Kevin P. Nolan for Cross-complainant and Appellant.

Gwilliam & Ivary and Eric H. Ivary for Cross-defendant and Respondent.

**OPINION**

**POCHÉ, J.**—This is an appeal from a judgment entered in an interpleader action.

*Facts*

The material facts have been submitted upon the stipulation of the parties and may be set out as follows.

In the early evening of July 1, 1977, cross-defendant George L. Kelly (hereafter respondent or Kelly), an electrician employed by Gravino Electric Company (hereafter Gravino Electric), suffered severe injuries when he was struck in front of his home by an automobile owned and operated by Peregrina Megij, an unlicensed motorist who was being given driving instructions by her passenger, Rebecca Hernandez. At the time of the accident, Kelly was working in an area between his own automobile and a truck owned by Gravino Electric, loading tools into the rear of the latter vehicle. As a result of his injuries, Kelly incurred medical expenses in excess of $20,000 and lost wages of over $25,000.

Although Megij was not covered by any type of liability insurance at the time of the accident, Hernandez, the passenger in the car, did possess coverage with Farmers Insurance for liability arising from her use of a nonowned vehicle. The applicable limit of this policy was $25,000. In addition, both Kelly's own automobile and the Gravino truck, of which he was a permissive user, were covered by liability policies affording uninsured motorist protection of up to $15,000 each.[1] Allstate Insurance Company (Allstate) provided coverage for Kelly's personal vehicle while cross-complainant United Pacific-Reliance Insurance Companies (hereafter United Pacific or appellant) afforded coverage to the Gravino truck.

Shortly after the accident, Kelly filed claims against Allstate and United Pacific pursuant to the uninsured motorist provisions of their policies. Pending the results of intercompany arbitration to determine whose coverage would be applicable to the accident, each of the two carriers agreed to pay respondent one-half of the limits of their respective coverage, or $7,500 apiece. Appellant was found liable through arbitration for the full amount of uninsured motorist coverage in January of 1978, and shortly thereafter reimbursed Allstate for its $7,500 payment to respondent. In the meantime, respondent had filed a claim against Hernandez and her carrier, Farmers Insurance, for the limits of the former's $25,000 liability policy. Having been notified by appellant that it claimed a subrogation interest in the proceeds of the Hernandez liability policy, Farmers Insurance brought an interpleader action seeking to resolve the conflicting claims on that policy. Appellant responded by filing the present cross-complaint against Kelly, alleging that it was statutorily entitled to recover from the proceeds of the Farmers Insurance policy all funds paid to respondent by way of uninsured motorist coverage.

After a hearing the trial court found that at the time of the accident the automobile owned by Megij was an uninsured motor vehicle within the meaning of Insurance Code[2] section 11580.2, subdivision (b); that Farmers In-

---

[1]This is the minimum coverage required by Vehicle Code section 16059.

[2]Unless otherwise indicated, all further statutory references are to the Insurance Code.

surance offered to pay $25,000, the policy limits, upon an allegation that its insured, Hernandez, was negligent in causing the accident; and that respondent would not be fully compensated for his damages even with the recovery of the proceeds of both the liability and uninsured motorist insurance. Consistent therewith, the court held that respondent was entitled to the full amount of $25,000 proffered by Farmers Insurance under the liability insurance policy issued to Hernandez. The present appeal follows.

*Review*

Appellant's foundational premise is that *Hernandez,* the passenger, was *"using"* the vehicle by giving driving instructions to the operator. For purposes of argument, we will assume that use is so established.

■ Because the passenger "using" the vehicle was insured, appellant argues that the vehicle cannot qualify as an "Uninsured Highway Vehicle" which the policy defines as: "a Highway Vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the State in which the Insured Highway Vehicle is principally garaged, no Bodily Injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such vehicle."

Resolution of appellant's contention requires close examination of the insurer's responsibility under its uninsured motorist endorsement, which it issued in conformity with section 11580.2, that responsibility is to "pay all sums which the Insured or his legal representative shall be legally entitled to recover as damages *from the owner or operator* of an Uninsured Highway Vehicle because of Bodily Injury sustained by the Insured, caused by accident and arising out of the ownership, maintenance or use of such Uninsured Highway Vehicle . . ." Thus, insofar as this portion of the policy is concerned, "use" is important only if it is use for which the "owner or operator" would be liable in damages.

To put it another way, the policy's entire focus is on the liability of the *owner* or *operator* for ownership, maintenance or use of a vehicle. Unless some other policy provision forbids, the injured party here may recover from his insurer what he would be entitled to recover as damages from Megij as owner or operator of that vehicle, irrespective of the theory of liability against Megij (e.g., negligent operation, negligently permitting Hernandez to use, etc.).

Does the definition of Uninsured Highway Vehicle command a different result here because an insured user was present in the vehicle?

No. The precision of the policy definition of "Uninsured Motor Vehicle" reveals that mere use by *any* insured does not take a vehicle out of the "Uninsured Highway Vehicle" designation. To the contrary, it is only use for which there is no insurance applicable by "any person *legally responsible for the use* of such vehicle." Megij—the owner and operator—was the only person legally responsible for the use of the vehicle. If appellant's contention that the presence of any insured user renders the vehicle not an "Uninsured Highway Vehicle" were correct, then the last 15 words of the policy definition would be surplusage: "a Highway Vehicle with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the State in which the Insured Highway Vehicle is principally garaged, no Bodily Injury liability bond or insurance policy applicable at the time of the accident *with respect to any person or organization legally responsible for the use of such vehicle.*" (Italics added.) We do not believe that these words can be so characterized.

The express emphasis on defining the insurer's responsibility in terms of owners and operators is further hammered home by the very portion of the policy upon which appellant relies: the definition of "Uninsured Highway Vehicle" makes explicit reference to this state's Financial Responsibility Law (FRL). (Veh. Code, § 16000 et seq.) Any ambiguity is thus removed because the FRL is the flip side of the uninsured motorist law. Each provision of the FRL is aimed at, and only at, owners and operators of motor vehicles. The FRL sets minimum amounts of insurance to be carried by owners or operators and the uninsured motorist law requires a safety net be placed in every policy of automobile liability insurance issued in this state insuring against the possibility that owners and operators do not live up to the FRL.

Appellant's alternative contention is that once it paid respondent under the uninsured motorist provision, it became subrogated—pursuant to section 11580.2, subdivision (g)—to the rights of respondent against Hernandez. We disagree.

Section 11580.2, subdivision (g) provides: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made."

It is not disputed that on independent theories of liability, the operator (Megij) and the passenger (Hernandez) of the injury-producing automobile were concurrent tortfeasors, each jointly and severally liable for respondent's injuries. Kelly incurred medical expenses in excess of $20,000 and wage losses in excess of $25,000. He sustained leg injuries necessitating that he wear a brace for the remainder of his life, and he will need surgery in the future to

repair permanent residual damage to his knee. That Kelly would not be fully compensated by the recovery of the limits of both insurance policies in question ($40,000) was clearly understood by the trial court.

Under these circumstances, the subrogation rights of the uninsured motorist carrier are subservient to the right of the injured party to be fully compensated to the extent possible, as the trial court correctly held. (See *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439].)

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.