[Civ. No. 28876. Fourth Dist., Div. One. Apr. 19, 1985.]

CRITERION INSURANCE COMPANY, Plaintiff and Respondent, v. PATRICK R. WELISH, Defendant and Appellant.

**COUNSEL**

Eugene A. Hooser for Defendant and Appellant.

Higgs, Fletcher & Mack, Donald H. Glaser and David D. Randolph for Plaintiff and Respondent.

**OPINION**

**BUTLER, J.**—Patrick R. Welish, a passenger in a car owned and driven by Robert D. Billings, Jr., was seriously injured in an accident involving a truck driven by Frank Acri and owned by Jerry Taylor, neither of whom were insured. Billings' automobile liability insurance policy, issued by Cri-

terion Insurance Company (Criterion), with $15,000/30,000 limits, included uninsured motorist coverage (UMC) with like limits. Welish claimed and Criterion paid the UMC policy limit of $15,000 to Welish who then sued Billings, Acri and Taylor for damages for his personal injuries which exceeded $30,000. Welish then demanded from Criterion the $15,000 policy limits under the policy's bodily injury liability coverage. Criterion denied that demand and filed this declaratory relief action naming Welish, Billings, Acri and Taylor as defendants and claiming the $15,000 UMC payment constituted a setoff against the $15,000 bodily injury liability limit effectively eliminating any obligation for further liability payments under the policy. The court agreed and this appeal by Welish followed.

## I

Under coverage A of the policy, Criterion agreed to pay on behalf of the insured, Billings, all sums he became "legally obligated to pay as damages because of bodily injury . . . sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile." The liability of Criterion under the bodily injury liability of the policy to "each person," and hence Welish, is $15,000. The policy absent the endorsement does not provide for a setoff of or reduction in the amount of the bodily injury liability obligation by reason of a UMC payment by Criterion to Welish.

## II

Attached to the policy is a two-page document with this title:

"AUTOMOBILE POLICY AMENDMENT

"Criterion Insurance Company
"1705 L Street, N.W., Washington, D.C. 20047

"FAMILY PROTECTION COVERAGE AMENDMENT
"(Automobile Bodily Injury Liability)
"(CALIFORNIA)

"SCHEDULE"

We refer to this document as the "UMC endorsement" or "endorsement." Under the endorsement, Billings is the named insured and limits of liability are $15,000/30,000. Welish is an insured. Conventionally, the endorsement requires Criterion to pay all sums an insured "shall be legally entitled to recover as damages" from the owner or operator of an uninsured vehicle

for bodily injury sustained by him caused by accident and arising out of the ownership or use of the uninsured vehicle. Taylor was the owner and Acri the driver of the uninsured vehicle. Criterion paid Welish $15,000 in discharge of this obligation.

Under "Conditions," of the endorsement none of the insuring agreements, exclusions or conditions of the policy "shall apply to the insurance afforded by this [endorsement] except the Conditions 'Notice' or 'Notice of Accident', 'Changes', "Assignment', 'Cancellation' and 'Declarations.' " This provision requires we restrict our UMC inquiries to the endorsement. Paragraph 6(a) limits liability to the $15,000/30,000 limits stated in the endorsement schedule.

"6. Limits of Liability.

"(a) The limit of liability stated in the schedule as applicable to 'each person' is the limit of the company's liability for all damages, including damages for care or loss of services, because of bodily injury sustained by one person as the result of any one accident . . . ."

Paragraph 6(b) further provides: "(b) Any loss payable under the terms of this coverage to or for any person shall be reduced by:

". . . . . . . . . . . . . . . . . . . . . . .

"(2) the amount the insured is entitled to recover from any other person insured under the Bodily Injury Liability coverage of this policy; and

"(3) all sums paid by or on behalf of the owner or operator of the uninsured motor vehicle and any other person or organization jointly or severally liable together with such owner or operator for bodily injury to an insured."

Paragraph 9 refers to Criterion's entitlement to proceeds recovered by Welish from persons legally responsible for his injuries. "9. Trust Agreement. In the event of payment to any person under this amendment:

"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made:

"(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under

this endorsement." Paragraph 9 goes on to require Welish to do things asked by Criterion to recover damages from the legally responsible persons through representatives designated by Criterion, costs and attorney fees to be reimbursed to Criterion from any recovery.

## III

■ We proceed to further analysis of paragraph 6(b), limits of liability of the UMC endorsement. Criterion contends "any loss payable" under UMC coverage shall be reduced by "the amount [Welish] is entitled to recover from any other person insured under the Bodily Injury Liability coverage of this policy . . . ."

Paragraph 6(b) tracks the language of Insurance Code[1] section 11580.2, subdivision (h)(2), which reads in part: "Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced:

"" . . . . . . . . . . . . . . . . . . . . . .

"(2) By the amount the insured is entitled to recover from any other person insured under the underlying liability insurance policy of which the uninsured motorist endorsement or coverage is a part." Paragraph 6(b) of the endorsement uses the phrase "shall be reduced." Section 11580.2, subdivision (h)(2) of the Insurance Code uses the phrase "may be reduced." As reduction is thus permissible, we conclude the phrase "shall be reduced" as used in paragraph 6(b) is authorized by the statute.

## A.

■ Welish correctly points out the UMC policy limit $15,000 payment made to him by Criterion preceded any demand for payment under the bodily injury liability provision of the underlying policy. He then argues the paragraph 6(b) limit of liability reduction inapplicable because "any loss payable" as recited in that paragraph is reduced by policy bodily injury coverage payments. Here, there is no loss payable to trigger the reduction as the UMC policy limits have been paid; ergo, there being no "any loss payable," the reduction is inapplicable.

In his opening brief, Welish declares he intentionally proceeded to demand and receive UMC payment to avoid the "ramifications" of Insurance Code section 11580.2, subdivision (h) providing the setoff of bodily injury

---

[1]All statutory references are to the Insurance Code unless otherwise specified.

liability payments against "any loss payable." Stated differently, Welish contends the order of payment controls the setoff issue.

We disagree. The trust provisions of paragraph 9(a) of the endorsement entitle Criterion "to the extent of [the UMC payment] to the proceeds" that Welish may recover from Billings, a person said to be legally responsible for his injuries. Paragraph 9(b) requires Welish to hold for Criterion's benefit his rights of recovery against Billings. These endorsement provisions do not compel any particular sequence of payments. Paragraph 9(a) gives Criterion the proceeds of the policy's bodily injury liability payment to the extent the UMC payment has been made and Paragraph 9(b) requires Welish to hold his rights against Billings for Criterion's benefit.

Section 11580.2, subdivision (h) provides, in part, that an "insured entitled to recovery under the uninsured motorist endorsement or coverage shall be reimbursed" subject to certain conditions under the California Insurance Code and that payment shall not be "delayed or made contingent upon the decisions as to liability or distribution of loss costs under other bodily injury liability insurance" coverage applicable to the accident. Criterion was compelled to reimburse Welish for his UMC damages without regard to determination of its potential bodily injury liability under the policy. Failure so to do doubtless would suggest further liability for unfair claims settlement practices under Insurance Code section 790.03, subdivision, (h) (2), (3), (4) and (5).

Finally, the phrase "any loss payable" in insurance parlance concerns injury, destruction or damage such as to charge the insurer with a liability under the policy. The phrase refers to the amount of damages which are payable to the limits of the policy by reason of liability of the insured. (*Jarrett* v. *Allstate Ins. Co.* (1962) 209 Cal.App.2d 804, 811-812 [26 Cal.Rptr. 231].) The UMC payment did not act to eliminate the source of the amount to be set off against bodily injury liability under the policy. "Any loss payable" established the limit of liability for the setoff. Payment of the UMC policy limit by Criterion did not act to obliterate the liability against which the endorsement contemplated a setoff by reason of bodily injury liability under the policy. (*California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston* (1977) 68 Cal.App.3d 1061, 1068, fn. 11 [137 Cal.Rptr. 690].)

## B.

Welish next contends bodily injury liability coverage is available and is not reducible by the UMC payment under the principles enunciated in

*United Pacific-Reliance Ins. Companies* v. *Kelly* (1983) 140 Cal.App.3d 72 [189 Cal.Rptr. 323] and *Security Nat. Ins. Co.* v. *Hand* (1973) 31 Cal.App.3d 227 [107 Cal.Rptr. 439]. Each of those cases concerned two policies and damages to an insured well in excess of policy limits. Each concerned the right of an insurer to be subrogated under section 11580.2, subdivision (g) to the rights of an insured to proceeds payable under another policy. *Kelly* and *Hand* permitted recovery under a UMC endorsement as well as under bodily injury liability provisions where *two* policies were concerned. Here, we deal with a *single* policy and with offset under section 11580.2, subdivision (h).

In *Kelly,* United Pacific, the insurer of a car used by Kelly, paid UMC policy limits to Kelly, an insured under the UMC endorsement, and sought to be subrogated to Kelly's claim to the proceeds of a liability policy issued by Farmers Insurance insuring an instructor passenger named Hernandez occupying an uninsured vehicle owned and operated by the instructed driver Megij whose negligence occasioned Kelly's injuries. The court denied subrogation: "Appellant's alternative contention is that once it paid respondent under the uninsured motorist provision, it became subrogated—pursuant to section 11580.2, subdivision (g)—to the rights of respondent against Hernandez. We disagree.

"Section 11580.2, subdivision (g) provides: 'The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made.'

"It is not disputed that on independent theories of liability, the operator (Megij) and the passenger (Hernandez) of the injury-producing automobile were concurrent tortfeasors, each jointly and severally liable for respondent's injuries. Kelly incurred medical expenses in excess of $20,000 and wage losses in excess of $25,000. He sustained leg injuries necessitating that he wear a brace for the remainder of his life, and he will need surgery in the future to repair permanent residual damage to his knee. That Kelly would not be fully compensated by the recovery of the limits of both insurance policies in question ($40,000) was clearly understood by the trial court.

"Under these circumstances, the subrogation rights of the uninsured motorist carrier are subservient to the right of the injured party to be fully compensated to the extent possible, as the trial court correctly held. [Cita-

tion.]"[2] (*Kelly, supra,* at 76-77.)

In *Hand,* the UMC insurer of a nonnegligent driver whose passenger was killed was not discharged from its obligation to pay UMC limits to the passenger's heirs even though the heirs had collected policy limits under the bodily injury liability policy of a negligent driver involved in a three-car collision, one of which was driven by an uninsured motorist. The UMC insurer was not entitled to subrogation against the proceeds payable under the bodily injury policy of the negligent driver.[3]

The setoff contemplated by section 11580.2, subdivision (h) and in the UMC endorsement is not the subrogation referred to in section 11580.2, subdivision (g) and explained in *Kelly* and *Hand.* We are concerned here with a single policy with a UMC endorsement issued by a single carrier.

*State Farm Mut. Auto. Ins. Co.* v. *Herron* (1977) 71 Cal.App.3d 673 [139 Cal.Rptr. 575] considered a State Farm automobile liability policy issued to Frank Repine, the driver of a car involved in a collision with an uninsured motorist. Repine and the uninsured driver were negligent. Adele Herron, a passenger in Repine's car, was killed. State Farm paid $15,000 policy limits to Adele's heirs under Repine's liability policy. Adele's heirs then demanded from State Farm the $15,000 policy limits under Repine's UMC endorsement which provided under limits of liability: " ' "(b) Any amount payable under this coverage because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by: [¶] (1) All sums paid on account of such bodily injury by or on behalf of [¶] (i) the owner or operator of the uninsured motor vehicle and [¶] (ii) Any other person or organization jointly or severally liable together with such owner or operator for such bodily injury *including all sums paid under Coverage A;* . . ." ' (Italics added.)" (*Herron, supra,* at 677.) As Adele's heirs were paid $15,000 policy limits under coverage A, the bodily injury liability coverage of Repine's policy, the court concluded the offset of that $15,000 against the like policy limit payable under Repine's UMC endorsement was permissible. The court noted the offset was permitted under section 11580.2, subdivision (h): "The rationale for the

[2]Section 11580.2, subdivision (g) was amended in 1982. The phrase "any person legally liable for such injury or death" was substituted for "any person causing such injury or death." (Stats. 1982, ch. 736, § 2, p. 2926.)

[3]*California State Auto. Assn. Inter-Ins. Bureau* v. *Huddleston, supra,* 68 Cal.App.3d 1061 reaches the same result. There, an insurance carrier paid off bodily injury liability limits to the parents of a passenger killed in an accident occasioned by the concurrent negligence of the driver of the insured vehicle and an uninsured driver. The court held the parents entitled to the UMC coverage of their policy which included the deceased as an insured.

above Insurance Code section is succinctly stated in the 1973 California Continuing Education of the Bar publication, California Uninsured Motorist Practice. Section 1.68, pages 50-51, states: " 'The reduction authorized by paragraph (3) of Ins C § 11580.2(h) . . . relating to amounts recoverable from any other person insured under the policy in question is often designated the "double liability" setoff. The purpose of this reduction is to provide the insurer with a means of protecting itself from having to pay any amount under the uninsured motorist coverage that the claimant (here the Herrons) is entitled to recover under the conventional bodily injury liability coverage in the same policy.

" 'For instance, if a rider in an insured vehicle is injured in an accident with a vehicle owned or operated by an uninsured motorist in which both drivers were negligent, he can file a tort action against his driver and, as an insured under his driver's uninsured motorist coverage, also file a claim against his driver's insurer. Under Ins C § 11580.2(h)(3) the insurer, if the policy so provides, may deduct any amount recovered by the rider in the tort action from the loss payable under the uninsured motorist coverage. (Citation.)' " (*State Farm Mut. Auto. Ins. Co.* v. *Herron, supra,* 71 Cal.App.3d at 678.) The court distinguished *Hand,* pointing out the UMC coverage in *Hand* was payable under the insured's (Hand's) policy while the bodily injury liability was paid under the policy of a third party tortfeasor. As Hand had paid for UMC coverage and his damages exceeded that paid under the third party policy, his UMC policy was required to respond. The court further noted *Hand* concerned subrogation under section 11580.2, subdivision (g) and not the offset provided for under section 11580.2, subdivision (h).

We conclude the *Herron* reasoning applicable here. Billings purchased insurance to protect him to policy limits from liability for damages to others occasioned by his negligence. The UMC statute required the policy to include the UMC endorsement with like policy limits. The UMC endorsement simply assures Criterion will pay sums to policy limits which Welish is legally entitled to recover from the negligent uninsured driver.

The endorsement, consistent with section 11580.2, subdivision (h), permits Criterion to offset the UMC liability against bodily injury liability. *Kelly, Hand* and *Huddleston* permitted UMC recovery as well as bodily injury liability recovery in circumstances involving two policies. Welish is simply not so situated. The UMC endorsement limiting liability by permitting the offset is clear, simple and unambiguous.

Judgment affirmed.

Wiener, Acting P. J., and Work, J., concurred.